A94A2578. TERRELL v. GEORGIA TELEVISION COMPANY.
(449 SE2d 897)

BIRDSONG, Presiding Judge.

James F. Terrell, former police chief of Winder, Georgia, filed this suit for defamation against Georgia Television Company d/b/a WSB Television, Channel 2, for making an allegedly defamatory broadcast on the occasion of Terrell's resignation as police chief during an investigation into alleged mismanagement and missing traffic tickets. Apparently, during an audit it was determined that some 600 traffic tickets were missing from about 4,200 tickets issued during the year. "Missing funds" were also raised in controversy, but the audit found there were no "missing funds." After that audit was made and reported and after Chief Terrell was asked to resign, $10,000 cash was found in two safes in Chief Terrell's office on Saturday, December 19, 1992. The money was secured until the following Monday when the city administrator (clerk) could check the records to account for that money. It does not appear to be in material dispute that the money was fully accounted for by 4:00 p.m. on Tuesday, December 22, 1992, the time of the city council meeting. However, the following statement was broadcast by reporter Lynn Harasin, at the 6:00 p.m. news broadcast on Tuesday, December 22, 1992: "Now the auditor said that he didn't find any missing funds here in Winder, but the mayor told me today when they were cleaning out Chief Terrell's office, they found more than $10,000 in cash in two of his safes,

*money that the mayor says was completely unknown and also unaccounted for.*" (Emphasis supplied.) In fact, by that time (5:00 p.m., December 22, 1992), the city clerk had tallied the $10,000 cash against records for evidence confiscated, and found no unaccounted-for funds. After a demand for retraction by Terrell, defendant announced at the 11:00 p.m. broadcast that same day: "The city administrator now says that he has accounted for and has properly documented the $10,000 in cash found in two safes in Terrell's office. The city administrator says that the money was seized in a drug raid." The next day, December 23, 1992, at the 6:00 a.m. broadcast a WSB reporter announced: "This morning, the city administrator of Winder says he has now accounted for and properly documented the $10,000 in cash found in two safes in Terrell's office. The city administrator says that the money was seized in a drug raid."

Terrell contends the latter broadcasts were not truthful retractions because they stated that the city administrator "now says" the money was "now accounted" for, to imply falsely that the money was unaccounted for when Harasin reported that "the mayor says [the money] was completely unknown and also unaccounted for." Terrell further contends there is a dispute whether the mayor actually told the reporter that the money was unaccounted for, because the mayor does not remember making such a statement. Terrell contends the false statements were made with actual malice because the reporter did not check the story with the city clerk before repeating the mayor's alleged words, in light of the reporter's knowledge of the mayor's alleged animosity toward Terrell and in light of the city audit which, before the $10,000 was found in Terrell's office safes, had concluded that there were no missing funds.

Summary judgment was granted to the defendant television station, and Terrell appeals. *Held:*

To recover damages for defamation as a public official, Terrell must demonstrate that the statements were made with actual malice, that is, with knowledge of their falsity or with reckless disregard for their truth or falsity; in this context, "reckless disregard" is not based on what a reasonably prudent publisher would have done, rather, there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. *Stange v. Cox Enterprises,* 211 Ga. App. 731, 735 (440 SE2d 503), citing *St. Amant v. Thompson,* 390 U. S. 727, 731 (88 SC 1323, 20 LE2d 262). This high standard of proof may protect some erroneous or false communications, but is required because "'the stake of the people in public business and the conduct of public officials is so great that neither the defense of truth nor the standard of ordinary care would protect against self-censorship and thus adequately implement First Amendment policies.' Id. at 731-732."

*Stange,* supra at 733. A public official in a defamation action must show actual malice with " 'convincing clarity,' " even on motion for summary judgment. Id.

The evidence cited to us does not rise to the level of "clear and convincing showing of actual malice" (*Stange,* supra at 733), that is, there is not "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication" (*St. Amant,* supra at 731, quoted in *Stange,* supra at 732) or broadcast it with reckless disregard for its truth or falsity equivalent to malice. Id. The record shows beyond material dispute that the mayor did in fact tell the reporter that he did not know the origin of the money in the safes. The mayor also admitted he may have used the precise words reported by the reporter. The fact that the mayor could not remember the precise words he used does not make the report false. Id. at 735. Even given the reporter's supposed knowledge of the mayor's alleged fear of Terrell, her reliance on the mayor's statement as authoritative and her mere failure to investigate his statement by consulting the city clerk do not establish bad faith, much less "actual malice," even if a reasonably prudent person would have investigated. Id. at 733, quoting *St. Amant,* supra at 733; *New York Times Co. v. Sullivan,* 376 U. S. 254, 287-288 (84 SC 710, 11 LE2d 686); and *Harte-Hanks Communications v. Connaughton,* 491 U. S. 657, 688 (109 SC 2678, 105 LE2d 562). That the reporter may have known the mayor and Terrell were allegedly "political enemies" does not render her reliance on the mayor's statement of fact unreasonable per se, much less malicious; knowledge attributed to the reporter of the mayor's "hostility" to Terrell amounted, in Terrell's own words, to no more than the mayor's expressed "fear" of Terrell and his statement that there were many things he could tell her about the chief. None of this makes the mayor's statements probably false, nor makes the reporter's report of his statements false. The reporter stated what the mayor said, and what the mayor said was true so far as he knew at the time.

It was not, as a matter of *legal duty,* in the facts of this case, incumbent on the reporter to investigate "whether the mayor's expressed fears [of Terrell] were well-founded" before reporting the mayor's statement that the money found in Terrell's safes was "unaccounted for." As for appellant's contention that the reporter should have investigated because the audit had reported no "missing funds," this audit was performed before the $10,000 was found in Terrell's safes, and the fact that there were no "missing funds" would not make it untrue that the $10,000 found later was "unaccounted for," or, as more pertinent to the facts of this case, which the mayor thought were "unaccounted for."

These contentions, singly or all together, do not amount to a

clear and convincing showing of actual malice — that the publisher "in fact entertained serious doubts as to the truth of his publication" (*St. Amant*, supra, quoted in *Stange*, supra at 732) or made them with reckless disregard for their falsity equivalent to such actual malice.

Judging the evidence in respondent Terrell's favor (see *Barber v. Perdue*, 194 Ga. App. 287 (390 SE2d 234)), we find no genuine issue of material fact as to actual malice on the part of the defendant in this case. The summary judgment to defendant was correct.

*Judgment affirmed. Blackburn and Ruffin, JJ., concur.*

DECIDED NOVEMBER 8, 1994.

*Mayer & Beal, Randolph A. Mayer, Andrew M. Beal,* for appellant.

*Dow, Lohnes & Albertson, Peter C. Canfield, Jeffrey C. Levy, Thomas M. Clyde,* for appellee.