68011. SPARKS v. THURMOND.
68012. BROWN v. THURMOND.

BANKE, Presiding Judge.
The plaintiff, Patricia Thurmond, filed separate suits against Betty Sparks and Frederick Brown, Jr., seeking to recover damages against them for slander and invasion of privacy. In each case, we granted an interlocutory appeal from the denial of the defendant's motion for summary judgment.

The factual setting of the litigation arises from a political controversy involving defendant Brown, as Mayor of Peachtree City, and Ben Parks, as Police Chief of Peachtree City. In an affidavit submitted in support of his motion for summary judgment, Brown averred that shortly after taking the oath of office as Mayor on January 7, 1982, he began investigating the police department in response to certain unspecified complaints by members or former members of the department and in compliance with a campaign pledge to "evaluate all phases of city government in Peachtree City." On May 5, 1982, Mayor Brown received information from Stewart Sparks, the husband of defendant Betty Sparks, to the effect that the department was about to hire the plaintiff as an officer although she possibly had a criminal record. Brown learned that the source of this information was Michael Edwards, a former major with the Atlanta Police Department currently in charge of security for a private corporation, and through Mr. Sparks, Mayor Brown scheduled a meeting with Edwards for the following day. At this meeting, which was also attended by Mr. Sparks and by Paul Melvin, the personnel director for Peachtree City, Edwards revealed that the plaintiff had formerly worked as an Atlanta police officer in a zone office headed by Parks, who was also a former Atlanta police officer; that she had been arrested during this period of time for possession of illicit drugs; and that he (Edwards) had received complaints during this period from other officers to the effect that Parks was showing favoritism towards her. Brown averred by affidavit that although Edwards did not specifically say Parks and

Thurmond were having an affair when they worked together in Atlanta, "that was the definite implication of the complaints he received and relayed to us." In a separate affidavit, Edwards characterized this as a reasonable interpretation of the information he had shared with Brown during the meeting.

On the following day, May 6, 1982, Brown telephoned defendant Betty Sparks, who worked as a dispatcher at the Peachtree City Police Department, and asked her to obtain the plaintiff's criminal history from the Georgia Crime Information Center's computer network. Mrs. Sparks did so, and Mayor Brown thereby obtained a printout which reflected that the plaintiff had been arrested on a drug possession charge on April 29, 1977. The report did not reflect any disposition of the charge, but it is clear from the record that the charge had been dismissed and that Brown was aware of that fact. That evening, Mayor Brown brought this GCIC record to a previously scheduled meeting of the city council, where he acquainted the council members and the city clerk with its contents and discussed the situation with them. Brown stated in his affidavit that "[a]s the criminal charge or charges against Mrs. Thurmond were dismissed neither I nor the city council felt that it was appropriate to block the hiring of Mrs. Thurmond which was done on that next day, May 7, 1982."

Mayor Brown testified that he did not discuss the rumored affair between the plaintiff and Chief Parks at this council meeting, but he admitted that he subsequently discussed it, privately and separately, with two individual councilmen. Brown averred that in doing so, he had been motivated by a concern for the operation of the police department and that he had "made it plain that the affair or unusual relationship between Chief Parks and Officer Thurmond was only rumored, and that neither I nor the source of my information (Mike Edwards) could say more than that." The two councilmen in question submitted affidavits corroborating this account, each stating that Brown had acquainted him with information of a "rumored affair" between the plaintiff and Chief Parks and each stating that this information had been revealed to them by the mayor "in the context of his concerns about the Police Department . . . ."

Mayor Brown subsequently suspended Parks from his duties as police chief, and Parks requested a hearing on the matter before the city council. Such a hearing was held on July 23, 24, and 30, 1982. It was adversarial in nature, with both Brown and Parks being represented by counsel and both sides calling witnesses. It appears that the hearing was opened to the public at Chief Parks' request and was attended by the local news media. Although Mayor Brown testified at the hearing as to his meeting with Edwards and his resultant knowledge of Chief Parks' alleged affair with the plaintiff, he did so only on cross-examination by counsel for Chief Parks regarding the issue.

Brown brought to the hearing copies of the plaintiff's GCIC arrest report and disseminated them to Chief Parks' counsel and to members of the city council.

The plaintiff seeks damages against Brown for slander based on his alleged false representations to others that she and Parks had engaged in an adulterous relationship and that she had been convicted of a drug charge. She further alleged in her complaint that Brown had unlawfully invaded her privacy by obtaining her GCIC arrest record, and disseminating it to others. In her complaint against Mrs. Sparks, the plaintiff alleges that she was slandered by a defamatory remark which Mrs. Sparks made to fellow Peachtree City Police Officer Michael Langford regarding her relationship with the chief and that Mrs. Sparks also invaded her privacy by participating in the procurement and dissemination of her GCIC record.

In a written statement executed on July 15, 1982, Officer Langford described the remark made to him by Mrs. Sparks as follows: "On or about May 11, 1982, I was standing at the Dispatcher's window talking to Dispatcher Sparks. She asked me if I knew that the Chief had hired his girl friend from Atlanta. I said no. Dispatcher Sparks told me that Officer Thurmond was the Chief's private piece. It was then time for me to go on duty, so I left the police department." Langford modified this statement in a subsequent affidavit, in which he averred that he had already heard "the same essential" thing from another source and that he had initiated the conversation with Sparks by asking her what she knew on the subject. *Held*:

1. The First Amendment guaranties of free speech and free press have been interpreted by the United States Supreme Court to prohibit a public official from recovering damages for a defamatory falsehood relating to his or her official conduct, absent proof that the statement was made with "actual malice," i.e., "with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times v. Sullivan, 376 U. S. 254, 279 (84 SC 710, 726, 11 LE2d 686, 706) (1964). See also Rosenbloom v. Metromedia, 403 U. S. 29, 30 (91 SC 1811, 29 LE2d 296) (1971); Wolston v. Reader's Digest Assn., 443 U. S. 157 (99 SC 2701, 61 LE2d 450) (1979). "[R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." St. Amant v. Thompson, 390 U. S. 727, 731 (88 SC 1323, 20 LE2d 262, 267) (1968). Stated differently, it has been held that "reckless disregard" is established by evidence showing that the defendant acted with a "high degree of awareness of . . . probable falsity . . ." Gertz v. Robert Welch, Inc., 418 U. S. 323 (94 SC 2997, 41 LE2d 789) (1974). Whether a plaintiff is to be considered a public official or pub-

lic figure and whether a showing of actual malice has been made are issues to be determined by the trial judge in the first instance, and thus both are particularly appropriate for resolution on motion for summary judgment. See *Williams v. Trust Co. of Ga.*, 140 Ga. App. 49, 53, 58 (230 SE2d 45) (1976).

This court has previously held that a police officer who sues to recover for defamatory statements concerning matters affecting his ability or qualification to carry out the duties of his office is to be considered a "public official" and therefore is required to prove actual malice. See *Pierce v. Pacific & Southern Co.*, 166 Ga. App. 113, 116 (303 SE2d 316) (1983). Quoting Coursey v. Greater Niles Township Pub. Corp., 40 Ill. 257, 265 (239 NE2d 837) (1968), the court in *Pierce* stated: "It is indisputable that law enforcement is a primary function of local government and that the public has a far greater interest in the qualifications and conduct of law enforcement officers, even at, and perhaps especially at, an 'on the street' level than in the qualifications and conduct of other comparably low-ranking government employees performing more proprietary functions. The abuse of a patrolman's office can have great potentiality for social harm; hence, public discussion and public criticism directed towards the performance of that office cannot constitutionally be inhibited by threat of prosecution under State libel laws.' " Accord Gray v. Udevitz, 656 F2d 588, 591 (10th Cir. 1981), and cases cited therein.

Since the efficient operation of the police department was a matter of legitimate concern to all citizens of Peachtree City, particularly its mayor and councilmen, it follows that the hiring practices of Chief Parks were an appropriate subject for public concern and comment. Having been hired into the department during the course of an ongoing investigation into its personnel practices and having admittedly had a close friendship with Parks during her tenure at the Atlanta Police Department, the plaintiff must accordingly be considered a public figure with respect to any statements the defendants may have made concerning her relationship with the chief. It follows that she must establish actual malice on their part in order to recover against them for slander.

2. Both in his deposition and by affidavit, Mayor Brown swore that in discussing the alleged affair between the plaintiff and the police chief, he had done nothing more than pass on the information he had obtained from Michael Edwards. Given the fact that Edwards was a former major with the Atlanta Police Department, where he had been superior officer to both the plaintiff and Parks, and given the plaintiff's failure to produce any evidence to controvert Brown's sworn testimony that he did not doubt the validity of the information, we hold that the evidence of record negates the existence of actual malice on Brown's part as a matter of law. Consequently, he is

entitled to summary judgment on this count of the complaint. Accord *Williams v. Trust Co. of Ga.*, supra, 140 Ga. App. at 62-63. Because we decide the issue on this basis, we do not reach the question of whether the record also establishes the existence of defenses based on OCGA § 51-5-7 (1), dealing with communications made in the good faith performance of a public duty, or OCGA § 51-5-7 (3), dealing with statements made with a good faith intention on the part of the speaker to protect his interest in a matter in which he is concerned.

3. Brown was also entitled to summary judgment as to the allegation that he had slandered the plaintiff by telling others that she had been *convicted* of a crime, since the record contains no evidence to refute his sworn denials that he ever made such a statement. See generally OCGA § 9-11-56 (e).

4. Although there is some evidence that defendant Sparks spoke of the rumored affair between the plaintiff and the chief as an existing fact rather than as a rumor, we believe that she was also entitled to summary judgment as to the allegations of slander. She had, after all, been told of the alleged affair by her husband, who had obtained his information from the same source as the mayor; and she, too, swore that she believed the information was reliable. In the absence of any evidence that she harbored any actual doubts about the truthfulness of the information, we accordingly hold that she, like defendant Brown, has negated the existence of actual malice on her part.

5. The plaintiff did not acquire a private right of action against the defendants pursuant to OCGA § 35-3-38, which renders the unauthorized procurement or dissemination of GCIC record information punishable by a fine, imprisonment, or both. In *Cox Broadcasting Corp. v. Cohn*, 231 Ga. 60 (200 SE2d 127) (1973), rev'd on other grounds, 420 U. S. 469 (95 SC 1029, 43 LE2d 328) (1975), the Georgia Supreme Court held that the violation of a penal statute does not automatically give rise to a civil cause of action on the part of one who is injured thereby. Based on this holding, the court in that case reversed a grant of summary judgment in favor of the plaintiff in a suit to recover for the defendants' violation of OCGA § 16-6-23 (formerly Code Ann. § 26-9901), which prohibits the disclosure of the identity of rape victims. In accordance with this authority, we hold that the defendants' evident violation of OCGA § 35-3-38 did not, in and of itself, give rise to a private cause of action against them for damages.

6. Nor did the defendants' dissemination of the plaintiff's arrest record give rise to a cause of action against them for invasion of privacy. The arrest was already a matter of public record which, the plaintiff admitted, had been widely publicized by the television and print media. There can be no liability for invasion of privacy merely

for giving further publicity to information which is already a matter of public record. *Reece v. Grissom*, 154 Ga. App. 194, 196 (267 SE2d 839) (1980); *Williams v. Coffee County Bank*, 168 Ga. App. 149, 150 (308 SE2d 430) (1983).

7. For the foregoing reasons, the trial court erred in denying the defendant's motions for summary judgment.

*Judgment reversed. Pope and Benham, JJ., concur.*

DECIDED MAY 31, 1984.

*W. Seaborn Jones, Brady D. Green*, for appellants.
*Ted D. Spears, James E. Sherrill*, for appellee.