A98A0794. DOMINY v. SHUMPERT et al.
(510 SE2d 81)

McMURRAY, Presiding Judge.

Plaintiff Dale E. Dominy, M.D. ("Dr. Dominy"), filed this action for libel (Count 1) and unfair business practices (Count 2) against defendants Cynthia R. Shumpert, M.D. ("Dr. Shumpert"), and Rockmart-Aragon Family Physicians, P. A. ("RAFP"), alleging that on May 17, 1995, when plaintiff was the emergency room physician at Polk General Hospital under an independent contract with Spectrum

[1] For Birdsong, P. J., who is deceased.

Health Care Services ("Spectrum"), he "saw a patient . . . for treatment of a cut. [He] treated the patient appropriately and correctly in the emergency room and released her. . . . Shortly after the Plaintiff's examination and treatment of this patient, the Defendant, [Dr. Shumpert], saw the patient in the [defendant RAFP] facility; . . . On June 5, 1995, [Dr. Shumpert] mailed to Mrs. Sherry Dombi, [of] Spectrum . . . a letter libeling and slandering the Plaintiff and the services of the Plaintiff as a physician. . . ." The complaint further alleged "a copy of said libel was maliciously transmitted through the United States [Postal Service] to Mr. Elder Perdue, Administrator of the Polk General Hospital . . . where the Plaintiff practiced his profession as an Emergency Room Physician; [that] Defendant further sought to have the Plaintiff removed from his position as an Emergency Room Physician by sending [the letter] to Mrs. Domby [sic] of Spectrum[; and that the] above [referenced] statements and libel were false and unfounded in fact." Count 2 claimed a wilful violation of OCGA § 10-1-372 (8) because defendants allegedly "disparaged the services and business of the Plaintiff by making false and misleading representations of fact about the Plaintiff's services[, for which transgressions plaintiff sought] Attorney's fees and . . . punitive damages."

Defendants jointly answered, admitting the sequence of events but denying the material allegations of falsity and malice. The letter Dr. Shumpert sent to Mrs. Dombi of Spectrum, with a copy to Elder Perdue, Administrator of Polk General Hospital is dated May 25, 1995, and recites as follows:

"A patient of mine named Margaret Campbell, (birthdate 1/7/19) was seen in the emergency room at Polk General Hospital on 5/17/95. Dr. Dale Dominy was the ER physician available on that date. *According to the patient,* Dr. Dominy never touched her during her entire visit in the emergency room. He ordered x-rays, filled out the ER sheet and wrote orders. He noted on the E.R. sheet that she had a 1 cm laceration on the right knee. The patient advised the E.R. personnel that she was allergic to Novocaine. The knee injury was not debrided or irrigated. It was cleansed with Peroxide, dressed with Neosporin and steri strips. The patient fortunately presented herself to my office the next morning. On evaluating her, it was noted that she has at least a 3 cm laceration, that is very deep, almost down to the bone, inferior to the patella, and was full of dirt and gravel. Copious irrigation was instituted by myself. Loose suturing was done, as well as placing a drain. The patient was given both IM and P.O. antibiotics, and followed closely over the next week. Fortunately she has done well and has not sustained a systemic cellulitis from *this mismanagement by the physician employed by you.* I am enclosing a copy of the ER sheet from the visit. I request that you investigate

this fully, *as I feel this doctor is incompetent to practice medicine in any capacity*. The patient could have lost a leg over this, if she had not received appropriate care. I would appreciate a response from you. . . . s/ Cindy Shumpert, M.D." (Emphasis supplied.)

By amendment, plaintiff claimed defendants defamed him again by sending another letter on May 25, 1995, addressed to David L. Morgan, M.D., in his capacity as Medical Coordinator for the Composite State Board of Medical Examiners, regarding Dr. Dominy as employed by Spectrum. This letter recites: "I would like to register a complaint regarding the above named physician. He works via Spectrum . . . at Polk General Hospital, in Cedartown, Georgia. On 5/17/95, a patient of mine was seen there for injuries due to a fall. Most specifically, she had a rather large laceration on her right knee. This physician, *according to the patient*, never touched her during her entire visit in the emergency room. The knee injury was not irrigated. It was not sutured. She was not given any antibiotics. *My biggest concern is that this physician never touched the patient, and yet he has filled out an ER sheet as if he did fully evaluate her*. Fortunately the patient presented to my office the next morning and was appropriately managed with copious irrigation of the knee wound, suturing, drain placement, as well as receiving antibiotics. I am enclosing a copy of the ER record. Please contact me for further details. . . . s/ Cindy Shumpert, M.D." (Emphasis supplied.)

After discovery, defendants moved for summary judgment based on the truthfulness of the statements and also on privilege, supporting their motion with the following evidence: The patient, Margaret Campbell had cataracts. While walking to one physician's office, she stepped in "a [pot]hole in the street . . . and it threw [her] for a loop. [Her] knee . . . was ruined . . . it injured every joint on [one] side [and] was bloody as a hog." She confirmed the emergency room physician, i.e., plaintiff, "never did touch [her]. [H]e never did get close enough to touch [her]. He acted like he thought [the patient] was a leper or . . . something." Plaintiff did not "clean [her] bloodied knee [but] told them [the nurses] to put a butterfly on it and that's all he told them to do." Plaintiff did not put any medicine on her leg, and denied her request "for a light dose of Demerol" offering Tylenol instead.

Professionally, plaintiff and defendant have never crossed paths before this incident. Dr. Shumpert has "never met Dr. Dominy." Dr. Dominy knows of no reason why Dr. Shumpert would harbor any malice or ill will towards him. When Mrs. Campbell told Dr. Shumpert that "she'd never been touched by Dr. Dominy[, Dr. Shumpert] did believe her . . . [b]ecause she's [a] patient and [Dr. Shumpert had] never known her not to tell the truth." Dr. Shumpert explained that she wrote her letter to Dr. Morgan at the Composite State Board

because she "was concerned for [her] patient's welfare. [Dr. Shumpert] felt [she] had a responsibility as a physician in the State of Georgia to ensure that patients receive proper care. . . . So it was [Dr. Shumpert's] opinion that, . . . if the doctor did not touch the patient, . . . other patients could be injured by him [because] [t]he standard of care in trauma care is that the patient be examined fully, particularly in a secondary survey, set forth by advanced trauma life support rules." Dr. Shumpert "thought it was her duty to report it." She chose the Composite State Board rather than Dr. Wall, Medical Director of the Emergency Room, because she "had talked to him [Dr. Wall] at other times about some problems [regarding treatment at the emergency room] and he had not given [her] very satisfactory answers."

Dr. Shumpert wrote to Sherry Dombi, "[b]ecause [she] felt his [plaintiff's] employer needed to know the situation, [Dr. Shumpert's] concern for patient welfare." Similarly, she sent Elder Perdue a copy of her letter because she "was concerned about the welfare of patients being seen in the emergency room by Dr. Dominy, and with him [Elder Perdue] being the administrator of that hospital, . . . felt he had a right to know of [Dr. Shumpert's] concern."

In opposition, plaintiff deposed in an affidavit that he "adequately examined and treated Mrs. Campbell's cut under the standard of care that physicians generally used under the circumstances existing at that time. [He] touched her on several occasions to look at the cuts and to remove her from the backboard. [He also opined that Spectrum was not an entity that] performed peer review under the statute [OCGA § 31-7-130 et seq]." At his deposition, Dr. Dominy testified that the patient arrived "in a cervical collar and on a backboard . . . [w]ith head restraints. [He] noticed there was a clean 4 by 4 gauze just below her knee in the mid tibial plateau. . . . And [he] lifted the gauze and [saw] a clean one centimeter laceration . . . with no indication of any foreign substance whatsoever." The physician is the "only one that can take off the cervical collar and the head restraints. [He] can't delegate this authority to anybody else." Dr. Dominy checked Mrs. Campbell's ears, nose and throat and also checked her eyes with a flashlight "to be sure she didn't have any pupil change in size." He palpated her abdomen "just to be sure there's no rigidity."

As for treatment, Dr. Dominy instructed the nurse to "put two one-fourth inch steri strips in an X fashion and put a large Bandaid and . . . also a long-leg splint. [Next, he] sent her to x-rays for both wrists, both knees. [Dr. Dominy] wanted to be sure there was no foreign body within the wound. [He] did not want to give [the patient] an antibiotic since she was allergic to penicillin. [He] didn't want to irrigate this wound because in so doing [he would] use a large syringe

[that] would tend to inject fluid into the subcutaneous tissue." Dr. Dominy subsequently explained the x-rays of the patient.

The Composite State Board of Medical Examiners "concluded its investigation of [Dr. Shumpert's] complaint filed against [Dr. Dominy and] determined there had been no violation of the Medical Practice Act and consequently voted to close [the] case." Nevertheless, plaintiff's contract with Spectrum was not renewed. His termination notice recites: "Multiple problems over several years. Well documented complaints on file — clinical skill, social [skills] and bad health . . . physician problem."

The trial court granted defendants' motion, concluding that Dr. Shumpert's statements "were true or were her opinion." The court further concluded that "Dr. Shumpert made her communications to the appropriate people in an attempt to satisfy both the public and the private moral duty. O.C.G.A § 51-5-7[, and that] [t]here is nothing in the evidence to imply that she made her statements with a malice intent." The trial court further ruled that, since Dr. Shumpert is not liable to plaintiff, defendant RAFP has no vicarious liability to plaintiff. Pursuant to OCGA § 9-11-56 (h), plaintiff filed this direct appeal. *Held*:

1. For purposes of this appeal, we assume that the statement "[a]ccording to the patient, Dr. Dominy never touched her during her entire visit in the emergency room" is a factual statement capable of being proved correct or false; and further assume it is in fact a false or incorrect statement. We also assume, without deciding, that Dr. Shumpert's characterizations of Dr. Dominy's treatment as "mismanagement" and of Dr. Dominy himself as "incompetent to practice medicine in any capacity," while undoubtedly her professional opinion, are also statements of ultimate fact which can be measured by the standard of medical care established at OCGA § 51-1-27. Consequently, we pretermit the first three enumerations of error and immediately address the fourth and fifth enumerations. We agree with the trial court that the statements made by Dr. Shumpert, reasonably based on the patient's oral history as corroborated by the physical evidence, provided a proper case for disclosure and so were conditionally privileged. Because the record fails to rebut the privilege with evidence of actual or express malice, we affirm.

2. "The following communications are deemed privileged: . . . Statements made in good faith in the performance of a public duty; [and] . . . Statements made in good faith in the performance of a legal or moral private duty[.]" OCGA § 51-5-7 (1) and (2). "To make the defense of privilege complete, in an action of slander or libel, good faith, an interest to be upheld, a statement properly limited in its scope, a proper occasion, and publication to proper persons must all appear. The absence of any one or more of these constituent elements

will, as a general rule, prevent the party from relying on the privilege." *Sheftall v. Central of Ga. R. Co.*, 123 Ga. 589 (hn. 5) (51 SE 646). Plaintiff complains of the letter to Sherry Dombi (with a copy to hospital administrator Elder Perdue) arguing that, under this test, "Dr. Shumpert cannot show good faith where she never even spoke to Dr. Dominy [plaintiff] before writing his employer[, Spectrum]." We disagree.

"One may publish, by speech or writing, whatever he honestly believes is essential to the protection of his own rights or those of another, provided the publication be not unnecessarily made to others than those who the publisher honestly believes are concerned in the subject-matter of the publication." *Sheftall v. Central of Ga. R. Co.*, 123 Ga. 589 (hn. 1), supra. According to Section 9.031 of the American Medical Association's Principles of Medical Ethics, "Physicians have an ethical obligation to report impaired, incompetent, and unethical colleagues in accordance with the legal requirements in each state and assisted by the following guidelines: . . . *Incompetence.* Initial reports of incompetence should be made to the appropriate clinical authority who would be empowered to assess the potential impact on patient welfare and to facilitate remedial action. The hospital peer review body should be notified where appropriate. Incompetence which poses an immediate threat to the health of patients should be reported directly to the state licensing board. Incompetence by physicians without a hospital affiliation should be reported to the local or state medical society and/or the state licensing or disciplinary board."

In the case sub judice, it is uncontradicted that defendant Dr. Shumpert's prior concerns about the proper level of emergency room care (provided by plaintiff and others), as expressed through proper channels to the emergency room medical director, Dr. Wall, were coldly received. After telephone inquiry, she was referred to Mrs. Dombi as the proper recipient of her letter. The applicable medical ethical principles do not direct that the subject of a communication regarding suspected medical incompetence be first notified of the problem, nor do those principles limit such communications solely to peer review groups. In this case, both Sherry Dombi of the physician provider Spectrum, and Elder Perdue as hospital administrator, were properly concerned with the subject matter of Dr. Shumpert's statements questioning Dr. Dominy's fitness. Consequently, the grant of summary judgment is not erroneous on the ground that defendant unnecessarily communicated to persons outside the scope of privilege.

3. "In all actions for printed or spoken defamation, malice is inferred from the character of the charge. However, the existence of malice may be rebutted by proof. In all cases, such proof shall be con-

sidered in mitigation of damages. In cases of privileged communications, such proof shall bar a recovery." OCGA § 51-5-5. The fifth enumeration contends the trial court "erred in finding that malice is necessary in the defamation of Dr. Dominy's profession because malice is inferred under O.C.G.A. § 51-5-5 by the nature of the charge."

" 'Malice in the law of defamation may be used in two senses. First, in a special or technical sense to denote absence of lawful excuse or to indicate the absence of privileged occasion. Such malice is known as "implied" malice or "malice in law." There is no imputation of ill will with intent to injure. Second, "malice" involving intent of mind and heart, or ill will against a person, . . . is classified as "express malice" or "malice in fact." ' Proof that the communication is privileged rebuts the prima facie presumption of malice in law. [Cits.]" *Atlanta Journal Co. v. Doyal*, 82 Ga. App. 321, 332 (4) (b) (60 SE2d 802). The "effect of privilege is to require the plaintiff to prove actual malice. [Cits.]" *Atlanta Journal Co. v. Doyal*, 82 Ga. App. 321, 333 (4) (b), supra.

In the case sub judice, Dr. Shumpert's direct testimony is that she was motivated solely out of a sense of duty and concern for patient safety; and that she bore no animus against plaintiff. Plaintiff testified at his deposition that he knows of no reason why Dr. Shumpert would bear him ill will. "This evidence[, when coupled with the showing of privilege] eliminated any genuine issue of material fact in this regard and placed the burden on [plaintiff] to come forward with a showing of [express] malice. [Plaintiff] having failed to make such a showing, summary judgment against [him] was proper. [Cits.]" *Meyer v. Ledford*, 170 Ga. App. 245 (1), 247 (316 SE2d 804). Since Dr. Shumpert is not liable to plaintiff, it follows that defendant RAFP is not vicariously liable. *Kornegay v. Mundy*, 190 Ga. App. 433, 435 (2) (379 SE2d 14).

4. The presence of privilege combined with the absence of malice also eliminates any claim plaintiff alleged under OCGA § 10-1-372 (8). Compare *Diedrich v. Miller & Meier & Assoc.*, 254 Ga. 734, 736 (2) (334 SE2d 308) (damages as well as injunctive relief available to protect registered trade name).

*Judgment affirmed. Blackburn and Eldridge, JJ., concur.*

DECIDED DECEMBER 1, 1998.

*James A. Satcher, Jr.,* for appellant.
*Minor, Bell & Neal, William F. Jourdain, Magruder & Sumner, J. Clinton Sumner, Jr., James E. Looper, Jr.,* for appellees.