## A04A1672. CITY OF GRIFFIN v. McCOY.
(602 SE2d 897)

ELDRIDGE, Judge.

The City of Griffin ("City") filed an application for a discretionary appeal that sought review of the Superior Court of Spalding County's decision to award back pay to a City employee who had been wrongfully terminated. We granted the City's application and now affirm the superior court's decision.

This case arose from then-City Manager Ron Rabun's firing of then-Building Officer Roy McCoy for making deliberate "false statements" against then-Director of Developmental Services Paul Costanzo, whom Rabun supervised. The alleged false statements were made in a detailed grievance McCoy filed against Costanzo. Rabun presided over the grievance hearing and determined that McCoy's claims were false. He instituted a disciplinary action against McCoy for a violation of Personnel Policy Section 11.3D.11: "The willful or reckless making of false statements . . . relating to matters within the employee's scope of employment or the operation and efficiency of the City in general." Rabun provided McCoy with a list of six specific instances of false statements that McCoy allegedly made against Costanzo which violated Section 11.3D.11. It is undisputed that these six specific instances of "false statements" detailed by Rabun were the only charges against McCoy. Following a disciplinary hearing, Rabun fired McCoy.

McCoy appealed to a Special Master ("SM") for reinstatement and back pay. The SM heard testimony and determined — as a matter of law — that the six specific instances cited by Rabun did not entail

false statements; that the evidence did not demonstrate violations of Section 11.3D.11; and that Rabun erred in dismissing McCoy. The SM reinstated McCoy. However, the SM declined to award him back pay for two reasons: (1) because McCoy's conduct in the filing of his grievance was "intemperate" and "was a contributing factor in the series of events which led to his dismissal," and (2) because McCoy and his attorney's actions were responsible "at least in part" for a delay in rendering the SM's decision.

McCoy appealed this decision to the superior court, alleging that the SM's reasons for not awarding him back pay had nothing to do with the "false statement" violations of Section 11.3D.11, which were the basis for his termination; that since his termination was improper, he was entitled to the pay he would have received had he not been improperly terminated. The superior court agreed, finding that since it was expressly determined *as a matter of law* that the evidence did not support the six specific charges against McCoy and that his termination was error, the SM's stated reasons for denying McCoy back pay penalized him for uncharged conduct unrelated to the basis for his termination; in addition, the superior court found that the record contained no evidence to support the SM's conclusion that McCoy and his attorney's conduct contributed to a delay in the decision-making process so as to warrant penalty. This is the decision currently under appeal. *Held*:

1. The City claims the superior court "erred in finding that McCoy failed to receive adequate notice" of the basis for denying him back pay. The City cites numerous instances in which McCoy was given notice of the six charges against him, i.e., the six wilful or reckless false statements made in violation of Section 11.3D.11 and contained in the grievance filed against Paul Costanzo. We find that the City's argument misapprehends the basis for the superior court's ruling. The court's decision did not turn on "notice" but on a lack of evidence of record to impose the disputed penalty, since McCoy did not make any false statements in violation of Section 11.3D.11. By brief, the City argues that the six explicit charges of false statements against McCoy necessarily included "the effect his statements had on his employment relationship with the City," regardless of the truth of those statements. However, not only does the City fail to direct our attention to evidence of record that would support its theory that truthful but otherwise "intemperate" statements merit penalty under the City's personnel policies, but it also fails to show evidence of either the effects that McCoy's statements had on the City or the manner in which McCoy was formally charged with the "effects" of his otherwise truthful statements. We do not agree with the City's argument that express charges underpinning a worker's termination from employment are merely "labels" with which due process is not

concerned, and thus, exoneration on those charges can still support imposition of penalty based upon an employee's otherwise "intemperate" conduct.[1] Here, if McCoy had not been fired for making false statements about Costanzo, he would have received his salary, his "intemperate" conduct notwithstanding. Since it was determined as a matter of law that he did not make false statements about Costanzo and that his termination was error, McCoy should receive the salary he would have received had the error not been made.

Our decision in *Bearden v. City of Austell*[2] does not authorize a different result. *Bearden* did not hold, as the City argues, that a failure of proof of charged offenses supports imposition of penalty for noncharged conduct, if there is evidence of such conduct. In *Bearden*, there was no failure of proof; we found the record as a whole *supported* with "ample evidence" the City's determination to terminate a police officer's employment for direct violations of personnel policies which expressly merited termination.[3] Here, by way of contrast, there is no evidence that "intemperate" conduct merits termination under the City's personnel policies, and the evidence does not support the six charges in violation of Section 11.3D.11 which would have merited dismissal. Absent proof of the reasons for termination, the refusal to award back pay to compensate for the period of improper termination is without legal justification.

2. The SM also refused to award back pay due to a delay in her decision-making process caused "at least in part" by McCoy. We find that the record supports the superior court's conclusion that at the time the SM issued her decision, no evidence demonstrated McCoy contributed to such a delay. The City argues that, while evidence of record may not show McCoy's contribution to delay, "the Special Master had full knowledge of the facts surrounding each delay," and thus her conclusion to deny back pay on this "delay" basis should have been upheld by the superior court. However, "[t]he appropriate standard of review to be applied to issues of fact on writ of certiorari to the superior court is whether the decision below was supported by *any evidence.*"[4] Since the SM's "delay-based" decision to deny back pay was not supported by evidence of record, its reversal was warranted.

Moreover, it is unclear to us how a finding of such "delay" is rationally related to a refusal to award back pay. The period of

---

[1] See *Sheppard v. DeKalb County Merit Council*, 144 Ga. App. 115 (2) (240 SE2d 316) (1977).

[2] *Bearden v. City of Austell*, 212 Ga. App. 398, 399 (1) (441 SE2d 782) (1994).

[3] Id. (making false log entries and leaving an assigned post without proper authority).

[4] (Emphasis supplied.) *City of Atlanta Govt. v. Smith*, 228 Ga. App. 864, 865 (1) (493 SE2d 51) (1997).

wrongful termination for which McCoy sought recompense was initiated by the City, not by McCoy. We agree with the superior court that McCoy should not be penalized during this period in which he was required to wait to be reinstated.

*Judgment affirmed. Ruffin, P. J., and Adams, J., concur.*

DECIDED AUGUST 5, 2004 —

*Elarbee, Thompson, Sapp & Wilson, Richard R. Gignilliat, Amy S. Auffant,* for appellant.

*James D. Dunham,* for appellee.