### A04A1778. JESSUP v. RUSH.
(609 SE2d 178)

MIKELL, Judge.

Tim Jessup, a former employee of the City of Glennville Police Department (the "Department"), appeals the trial court's grant of summary judgment to Quinton Rush, the sheriff of Tattnall County, in Jessup's libel action. Jessup's claim arises out of his assertion that Sheriff Rush, in a letter to Department Chief Larry Stubbs, expressed shock that Stubbs would hire Jessup as an investigator, knowing that Jessup "broke up a family in town and was involved in an altercation in the city streets of Glennville with [the] jealous husband" and that he "doesn't know a felony from a misdemeanor." We affirm.

> In reviewing grants of summary judgment, this court conducts a de novo review of the law and the evidence. To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.[1]

So viewed, the evidence shows that from January 1998 until he resigned in December 1999, Jessup was a police officer with the Department. On January 4, 2002, Jessup was hired by the Department as an investigator. Jessup voluntarily resigned that position on August 1, 2003, in order to begin work as a lieutenant with the Riverdale Police Department.

In July 1998, while he was employed as a police officer with the Department, Jessup met Candace Knight Jessup and began a relationship with her. At that time, Candace had been separated from her husband, Louis Knight, for three months. In November 1998, Knight and Jessup were involved in an altercation at a red light. According to Knight, the two men exited their vehicles and hit each other. Knight was arrested. During a hearing about the incident, Jessup

---

[1] (Footnote omitted.) *Cooper-Bridges v. Ingle,* 268 Ga. App. 73, 74 (601 SE2d 445) (2004).

appeared in his uniform to testify. Candace's divorce was finalized on May 25, 1999; she married Jessup on June 5, 1999. According to Knight, Candace's relationship with Jessup led to the divorce.

In June 2002, Sheriff Rush wrote letters to Chief Stubbs, Glennville's Mayor Jean Bridges, the Glennville City Council, and to Rush's deputies documenting problems between the sheriff's office and the Department and explaining Rush's decision not to work with the Department. In the letter to Chief Stubbs, Rush wrote,

> [o]ur problems got much worse after you hired [Jessup] as your so-called investigator. I was shocked that you would hire such a person with his past in Glennville, Georgia. We all know that he broke up a family in town and was involved in an altercation in the city streets of Glennville with this jealous husband. The husband was charged and convicted in the Tattnall County Court. [Jessup] came to court that day in a Glennville Police Department uniform even though it had nothing to do with his job. It was very inappropriate to use your uniform in this manner. I would never consider bringing an officer of this caliber back into our city. What kind of example does this set for our young people?

In a letter to his deputies instructing them not to work with the Department, Rush wrote, "I will not jeopardize the other inmates and our jailers [with an inmate infected with AIDS] on [Jessup's] word about anything. He doesn't know a felony from a misdemeanor."

Jessup filed a libel action based on the two letters. Rush moved for summary judgment, which the trial court granted, finding that the statements were not libel per se but libel per quod and that Jessup's claim failed because he had not shown damages. The trial court further found that as a public official, Jessup could not recover without a showing of actual malice. The motion hearing was not transcribed.

In his sole enumeration of error, Jessup contends that the trial court erred in finding that Rush's statements were not libel per se and that Jessup was a public official. We disagree.

The First Amendment prohibits a public official from recovering damages for a defamatory falsehood/criticism relating to his official conduct absent proof that the statement was made with "actual malice," i.e., "with knowledge that it was false or with reckless disregard of whether it was false or not."[2] "Whether [Jessup] is to be

---

[2] *New York Times Co. v. Sullivan*, 376 U. S. 254, 279-280 (II) (84 SC 710, 11 LE2d 686) (1964).

considered a public official or public figure and whether a showing of actual malice has been made are issues to be determined by the trial judge in the first instance, and thus both are particularly appropriate for [summary] resolution."[3] A police officer who sues to recover for defamatory statements concerning matters affecting his ability or qualifications to carry out the duties of his office is to be considered a "public official" and, therefore, is required to prove actual malice.[4]

> It is indisputable that law enforcement is a primary function of local government and that the public has a far greater interest in the qualifications and conduct of law enforcement officers, even at, and perhaps especially at, an "on the street" level than in the qualifications and conduct of other comparably low-ranking government employees performing more proprietary functions. The abuse of a patrolman's office can have great potentiality for social harm; hence, public discussion and public criticism directed towards the performance of that office cannot constitutionally be inhibited by threat of prosecution under [s]tate libel laws.[5]

We disagree with Jessup that Rush's statements have nothing to do with Jessup's status as a police officer. The statements were made in official letters documenting Rush's displeasure with the Department and they concerned Jessup's qualifications for carrying out his position as a police officer. Accordingly, Jessup must establish actual malice on the part of Rush in order to recover against him. We find the record devoid of any evidence of actual malice. Therefore, summary judgment on this issue was proper.

In light of this holding, we need not decide whether the trial court erred in finding the statements libel per quod.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

---

[3] (Citation omitted.) *Sparks v. Thurmond*, 171 Ga. App. 138, 140-141 (1) (319 SE2d 46) (1984). See also *Pierce v. Pacific & Southern Co.*, 166 Ga. App. 113, 119 (2) (303 SE2d 316) (1983).

[4] *Sparks*, supra at 141 (1). See also *Terrell v. Ga. Television Co.*, 215 Ga. App. 150, 152-153 (449 SE2d 897) (1994) (affirming grant of summary judgment to defendant television station in libel action because plaintiff police chief did not prove actual malice); *Pierce*, supra (affirming directed verdict in favor of defendant television station in libel action because plaintiff police officer failed to prove constitutional malice). Compare *Lake Park Post v. Farmer*, 264 Ga. App. 299, 300-302 (2) (590 SE2d 254) (2003) (affirming verdict in favor of plaintiff deputy sheriff in action for libel because he met burden of proving that defendant newspaper acted with constitutional malice).

[5] (Citation and punctuation omitted.) *Pierce*, supra at 116 (1).

246

DECIDED JANUARY 7, 2005 — 

*Gregory N. Crawford*, for appellant.
*Barrow & Ballew, Walter W. Ballew III*, for appellee.