A05A0055, A05A0056. RABUN et al. v. McCOY; and vice versa.
(615 SE2d 131)

ANDREWS, Presiding Judge.

Roy W. McCoy II, the former building official of Griffin, and the plaintiff below, cross-appeals in Case No. A05A0056 from the trial court's grant of defendant City of Griffin's motion for summary judgment based upon failure to comply with the ante litem notice requirements of OCGA § 36-33-5.[1] In Case No. A05A0055, Ron Rabun, the city manager of Griffin and also a defendant below, appeals from the trial court's denial of his motion for summary judgment pursuant to our grant of his application to appeal. These appeals are considered together.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c)." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). We review the grant or denial of summary judgment de novo, construing the evidence in favor of the nonmovant. Id.

So viewed in favor of McCoy, the evidence was that he was hired by the City of Griffin on January 17, 1994, as the building official in charge of housing code enforcement and supervision of other inspectors. One of the main reasons for his hiring was his prior success cleaning up substandard housing in Americus. Originally, McCoy reported directly to the city manager, Rabun's predecessor. Paul Costanzo was hired in March 2000, as director of community services, a new position, and McCoy began to report to him instead of the city manager. McCoy acknowledged that, from the beginning, his working relationship with Costanzo was "hostile." Later, Costanzo, as part of a reorganization, demoted McCoy from building official to senior building inspector, eliminating McCoy's oversight of other inspectors.

Rabun became city manager in December 2000. On July 30, 2001, McCoy submitted to Rabun an eight-page grievance against Costanzo, charging him with numerous misdeeds, ranging from minor to serious. Prior to filing this grievance, McCoy had "no relationship whatsoever" with Rabun. On August 21, 2001, Rabun held a daylong hearing to investigate McCoy's complaints. Approximately two weeks following the grievance hearing, Costanzo was asked to resign by Rabun as the result of "an accumulation of events." In his findings of September 10, 2001, regarding McCoy's grievance against Costanzo, Rabun concluded that the grievance was the result

---

[1] The trial court treated the motion as one to dismiss, based upon *Nicholas v. Van*, 252 Ga. App. 411, 414 (556 SE2d 497) (2001). But see, e.g., *Vaillant v. City of Atlanta*, 267 Ga. App. 294, n. 2 (599 SE2d 261) (2004), and *Canberg v. City of Toccoa*, 245 Ga. App. 75, 77 (535 SE2d 854) (2000) (ante litem issue considered on motion for summary judgment).

of personal disagreements between McCoy and Costanzo and denied the grievance. Further, Rabun concluded that six of the fifty-eight specific instances listed by McCoy appeared to be false. He advised McCoy he was considering disciplinary action against him, based on Griffin's personnel policy which prohibited "[t]he willful or reckless making of false statements, to supervisors, officials, the public, boards, commissions, or agencies relating to matters within the employee's scope of employment or the operation and efficiency of the City in general." On September 11, 2001, Rabun issued his notice to McCoy of administrative pre-disciplinary action and placed McCoy on administrative leave with pay until a conference could be held.

Cecil, a reporter for the Griffin Daily News, learned that McCoy, a highly visible city official, had been placed on administrative leave and interviewed Rabun. Cecil's affidavit in support of Rabun's and the City's motion for summary judgment stated that, in general, he recalled speaking with Rabun concerning McCoy in "late 2001." His deposition, however, indicated there may have been later conversations preceding publication of later articles. On September 17, 2001, Cecil's initial report on the leave and the reasons therefor was published in the newspaper.[2]

On September 21, Rabun issued McCoy a memorandum regarding the pre-disciplinary conference, setting out McCoy's six specific statements which Rabun believed to be false. Following the conference held six days later, Rabun, who had firing authority over McCoy, determined that McCoy's employment with the City would be terminated.

McCoy was notified of his termination on September 28 and appealed it pursuant to Griffin's administrative appeal procedure. McCoy was provided with a formal notice of charges by Rabun on October 3, 2001, detailing the six statements which Rabun believed to be false. A second article appeared in the Griffin Daily News on October 5, 2001, regarding the termination and appeal.

McCoy appealed Rabun's termination decision to an independent special master and a hearing was held on February 19, 2002. Based on the evidence heard by her and her interpretation of the controlling disciplinary standard, the special master, in her decision of March 18, 2002, found that, although McCoy's statements regarding Costanzo made in the grievance proceedings were intemperate and the result of the deteriorating relationship between the two men, the "City Manager erred when he determined the six allegations to constitute willful and reckless false statements." The special master found that the grievance statements did not rise to the level of just

---

[2] McCoy made no claims against the newspaper.

cause for dismissal.[3] Pursuant to her decision, McCoy was reinstated. Although the special master did not award back pay to McCoy, this portion of her ruling was overruled by the superior court and affirmed by this Court in *City of Griffin v. McCoy*, 269 Ga. App. 1 (602 SE2d 897) (2004).

Articles appeared in the Griffin Daily News on February 27 and April 22, 2002, regarding the appeal hearing and the special master's decision. Another article was published on McCoy's reinstatement.

McCoy filed his suit against the City and Rabun, individually and in his official capacity, alleging that the charges underlying his termination were false. He asserted claims for (1) defamation; (2) intentional infliction of emotional distress; and (3) false light/invasion of privacy.

## Case No. A05A0056

1. We consider first McCoy's contention that the trial court erred in dismissing his claims against the City of Griffin.

The trial court's order was premised on its conclusion that McCoy had not complied with the six-month time requirement of OCGA § 36-33-5.

Under OCGA § 36-33-5, a claimant must give written notice to a municipality of a suit for damages to person or property "[w]ithin six months of the happening of the event" upon which the claim is predicated. See *Clark v. City of Smyrna*, 212 Ga. App. 598, 599 (1) (442 SE2d 461) (1994) (Oral notice to the municipality is insufficient.). In *City of Chamblee v. Maxwell*, 264 Ga. 635, 636-637 (452 SE2d 488) (1994), the Supreme Court held that, under this statute, claims against municipalities based upon any event occurring more than six months before written ante litem notice was given were barred, even if the event was part of a continuing pattern of events, such as a continuing trespass or nuisance. According to the Court, this construction fulfills the statute's purpose, which is to "afford city officials the opportunity to take proper steps to abate a continuing nuisance or trespass before the effects thereof become great or far-reaching." (Citation omitted.) Id. at 637.

On June 10, 2002, McCoy's attorney sent a letter headed "Settlement Demand Pursuant to OCGA § 51-12-14 for Roy W. McCoy, II" to city officials. That letter states, in pertinent part, that:

---

[3] She also concluded that McCoy was at least partly responsible for the deteriorating relationship.

This firm represents Roy W. McCoy, II for all claims arising out of defamatory statements made by City of Griffin employees, including but not limited to City Manager, Ron Rabun, in *September 2001.* [Demand per OCGA § 51-12-14]. . . . As you are aware, Mr. McCoy was dismissed by City Manager Ron Rabun for allegedly lying about his own involvement in improper activities conducted in violation of city policies by Jim [sic] Constanza [sic], former Director of Developmental Services. Thereafter, Mr. McCoy requested a hearing . . . and Mr. Rabun presided at that hearing. Mr. Rabun upheld his prior decision to dismiss Mr. McCoy, and thereafter made defamatory statements to the effect that Mr. McCoy admitted to lying during the hearing.

(Emphasis supplied.)

On July 1, 2002, a letter titled "Ante-Litem Notice for Roy W. McCoy, II . . ." was sent to these officials, stating in pertinent part that:

This letter is being sent in accordance with O.C.G.A. § 36-33-5. As you are aware, this law firm represents Roy W. McCoy, II, for all claims arising out of defamatory statements made by City of Griffin employees, including but not limited to City Manager, Ron Rabun, from *July 2001* through present, including but not limited to statements made on or about February 19, 2002, between February 19 and February 27, 2002, and on or about *September 11, 2001* and *August 21, 2001.* . . . More specifically, Mr. Rabun has falsely stated that our client made false statements in connection with his grievance filed on *July 29, 2001* regarding former Director of Development Services Paul Costanzo. Subsequently, our client was dismissed by City Manager Ron Rabun, who has repeatedly defamed Mr. McCoy.

(Emphasis supplied.)

The trial court properly concluded that, as to all acts of Rabun prior to December 10, 2001 (six months prior to the June 10, 2002 letter, assuming but not deciding that it was valid notice under OCGA § 36-33-5), there had not been compliance with the six-month ante litem requirement by either letter. *City of Chamblee v. Maxwell,* supra; *Nicholas v. Van,* 252 Ga. App. 411, 412 (556 SE2d 497) (2001).

The July 1, 2002 letter also references defamatory statements of Rabun allegedly made on or about February 19 and between February 19 and February 27, 2002. Although these dates are within the six

months of the July 1, 2002 letter, we consider other arguments made below, although not relied upon in the trial court's order in granting the City's motion. As a matter of judicial economy, we will affirm an order under the "right for any reason rule," when the judgment may be sustained upon a legal basis apparent from the record which was fairly presented in the court below. See generally *City of Gainesville v. Dodd*, 275 Ga. 834 (573 SE2d 369) (2002); *Bailey v. Hall*, 267 Ga. App. 222, 223, n. 1 (599 SE2d 226) (2004); *Taylor v. Kennestone Hosp.*, 266 Ga. App. 14, 21 (4) (596 SE2d 179) (2004).

Although substantial compliance is all that is required to meet the requirements of OCGA § 36-33-5,[4] the July 1 letter contains nothing that refers to any claims for intentional infliction of emotional distress or false light/invasion of privacy. Therefore, McCoy failed to give the City ante litem notice of these two claims and they were properly dismissed by the trial court on this basis. *Colvin v. City of Thomasville*, 269 Ga. App. 173, 175 (1) (603 SE2d 536) (2004); *Vaillant v. City of Atlanta*, 267 Ga. App. 294, n. 2 (599 SE2d 261) (2004).

Further, there is no indication in that letter of the person to whom Rabun made these February statements or the specific content of these statements. Therefore, these statements were also inadequately noticed to the City. *Colvin v. City of Thomasville*, supra; *Vaillant v. City of Atlanta*, supra.

Also, even if Rabun's oral statements to reporter Cecil on February 26, 2002, were to be considered adequately noticed, the City would not be liable for slander absent a showing that the municipal corporation "expressly ordered and directed that officer to say those very words." *Behre v. Nat. Cash Register Co.*, 100 Ga. 213, 214 (27 SE 986) (1897).[5] See also *Tronitec, Inc. v. Shealy*, 249 Ga. App. 442, 444 (1) (c) (547 SE2d 749) (2001); *Gillis v. American Gen. Life &c. Ins. Co.*, 222 Ga. App. 891, 892 (476 SE2d 648) (1996). No such evidence has been brought forward in this case and Rabun specifically denied any such direction.

There was no error in the trial court's grant of the City of Griffin's motion for summary judgment.[6]

---

[4] E.g., *Jones v. City of Austell*, 166 Ga. App. 808, 809 (305 SE2d 653) (1983).

[5] McCoy's request that this Court overrule *Behre*, supra, is not within our purview. Ga. Const. Art. VI, Sec. VI, Par. VI.

[6] The trial court correctly concluded that there was no requirement that McCoy comply with the ante litem provision with regard to Rabun. *Carter v. Glenn*, 243 Ga. App. 544, 550 (2) (533 SE2d 109) (2000).

## Case No. A05A0055

2. Rabun's first enumeration is that the trial court erred in rejecting his defense of privilege and finding that he had not carried his burden on summary judgment regarding this issue.

Rabun argued that his statements were privileged as statements made in good faith in the performance of a public duty pursuant to OCGA § 51-5-7 (1).

"To make the defense of privilege complete, in an action of slander or libel, [and any other tort based on communications[7]], good faith, an interest to be upheld, a statement properly limited in its scope, a proper occasion, and publication to proper persons must all appear." (Citation and punctuation omitted.) *Sparks v. Parks*, 172 Ga. App. 823, 826 (1) (324 SE2d 784) (1984).

Proof that the defendant acted with actual malice in making the statement, however, defeats the defense of privilege. OCGA § 51-5-9; *Cooper-Bridges v. Ingle*, 268 Ga. App. 73, 77 (4) (601 SE2d 445) (2004); *Kurtz v. Williams*, 188 Ga. App. 14, 16 (3) (371 SE2d 878) (1988).

To prove actual malice, McCoy must show that Rabun knew that the statements were false or published to Cecil with reckless disregard of whether they were false or not. *Cooper-Bridges v. Ingle*, supra, citing *Morton v. Gardner*, 155 Ga. App. 600, 605 (6) (a) (271 SE2d 733) (1980).

In support of his motion for summary judgment, Rabun submitted his, Cecil's, and the special master's affidavits. In his own affidavit, Rabun stated that

> [i]n investigating Mr. McCoy's grievance against Mr. Costanzo, in preparing the charges and initiating disciplinary proceedings against Mr. McCoy, and in preparing disciplinary notices and related memoranda, I was acting in my capacity and in the performance of my duties as City Manager. In taking these actions, I was in no way motivated by personal animosity, malice, ill-will or a desire to harm Mr. McCoy. . . . Throughout the many years that I have served in public employment, I have maintained a policy of an open door to the public, including the news media. I consider media relations to be an important function of my job. Consistent with this view, the International City/County Management Association (ICMA), of which I am a member, has developed a list of practices essential to effective local

[7] *Munoz v. American Lawyer Media*, 236 Ga. App. 462, 464 (1) (a) (512 SE2d 347) (1999).

government management. The sixteenth practice is "Media Relations: Communicating information to the media in a way that [increases] public understanding of local government issues and activities and builds a positive relationship with the press." . . . Consistent with my open door policy, I responded to inquiries from . . . [Mr.] Cecil about Mr. McCoy's employment situation. In speaking with Mr. Cecil, I was in no way motivated by personal animosity, malice, ill-will, or a desire to harm Mr. McCoy. I considered Mr. McCoy's employment situation to be an issue relevant to the public due to the fact that he held a very visible position with the City's Department of Development Services.

Cecil, in his affidavit, averred that "[i]n all my dealings with Mr. Rabun, I have never observed him do or say anything suggesting to me that he harbored any personal animosity, malice, or ill-will towards Mr. McCoy."

The affidavit of the special master stated that "[m]y opinion that the charges against McCoy did not support his discharge should not be construed as a finding that they constitute false and defamatory statements. I did not find that Rabun intentionally or negligently made any untrue accusations about McCoy or his conduct."

By presenting this evidence, Rabun established lack of malice on his part and the burden shifted to McCoy to point to specific evidence of actual malice on Rabun's part. *Culpepper v. Thompson*, 254 Ga. App. 569, 571 (a) (562 SE2d 837) (2002); *Munoz v. American Lawyer Media*, 236 Ga. App. 462, 464 (1) (a) (512 SE2d 347) (1999); *Dominy v. Shumpert*, 235 Ga. App. 500, 506 (3) (510 SE2d 81) (1998).

[W]here there is uncontradicted testimony by a party as to a certain fact . . . then the opposing party must produce "some other fact" to the contrary. . . . *If the "other fact" is shown directly, that is sufficient for the case to go to a jury, but if it is circumstantial then it must be evidence sufficient to support a verdict.* The circumstantial evidence must be inconsistent with the direct testimony and must tend to establish the conclusion projected while rendering less probable all inconsistent conclusions. . . . [T]he evidence must not constitute a "mere inconclusive inference" for then it is insufficient to withstand summary adjudication.

(Citations and footnote omitted; emphasis supplied.) *Cohen v. Hartlage*, 179 Ga. App. 847, 850 (348 SE2d 331) (1986). See also *Brewer v. Schacht*, 235 Ga. App. 313, 318 (4) (b) (509 SE2d 378) (1998).

Rabun having discharged his burden of coming forward and demonstrating an absence of evidence of actual malice on his part, it was incumbent upon McCoy to point to specific evidence giving rise to a triable issue. *Kaylor v. Atwell*, 251 Ga. App. 270, 272 (2) (553 SE2d 868) (2001).

In response to Rabun's motion and affidavits, McCoy identified nine facts from which he argued malice could be inferred. These were as follows and, to the extent they are not factually disproven by the three affidavits submitted by Rabun and set out above, the reason they do not create a factual issue is noted in brackets following the fact: (1) Rabun's statements to Cecil that McCoy made false statements in connection with his job, in his grievance, and at the hearing. Although Rabun had no obligation to speak to the press, it was his personal preference to do so and no harm would have accrued to the City had he declined to do so. (2) After the filing of the grievance, Rabun and Costanzo collaborated on a plan in late August 2001, to reorganize McCoy's department, thereby demoting McCoy to senior building inspector with a lower pay grade and no supervisory authority. McCoy's pay grade was later restored by Rabun when he told Rabun a pay reduction could only occur under City policies when an employee was demoted for disciplinary reasons. (No evidence is cited by McCoy here or below to support any "collaboration." McCoy's deposition indicates Costanzo was responsible for the reorganization.) (3) At the disciplinary hearing, Rabun refused to use his authority to compel attendance of witnesses. (No authority to compel such attendance has been shown and was specifically denied by Rabun.) (4) Despite conflicting testimony at the hearing, Rabun imposed the harshest available sanction, dismissal. (5) McCoy's special master's hearing was the only one during his employment with the City which occurred post-termination rather than pre-termination. (Rabun had direct authority over McCoy. The special master's procedure technically applied only to proposed disciplinary action by department heads and other management level employees who did not have actual authority to impose such discipline, as did Rabun. The procedure was nonetheless made available to McCoy.) (6) During his suspension pending the special master's hearing, Rabun reorganized the department again, eliminating McCoy's former position. (7) During the period following his termination and prior to the special master's hearing, McCoy proceeded to attempt to open a restaurant in Griffin which had a gravel parking lot. He had obtained permits for the opening which allowed use of the gravel parking lot, as had been allowed other existing businesses grandfathered under the new paved parking lot requirements. Rabun arbitrarily blocked permitting of the restaurant in order to force McCoy to incur the additional expense and delay of paving the lot. Rabun could recall

only one other incident where he had taken such action and it was three days before his scheduled deposition. (Rabun was acting on advice of the city attorney who concluded that the grandfathering only applied to use of property and did not apply to construction and development standards.) (8) After the special master's findings, Rabun did not offer him a job in his former capacity in planning and development and told Cecil in June 2002, that although he did not agree with the findings, he had to comply with it. Further, he said "[w]e didn't want him back in planning and zoning, and we really couldn't place him back there because the department had been reorganized at that point." Further, Rabun deposed that, even had there been a position available in planning and development, he would not have considered McCoy for that job. (McCoy was offered and accepted another position with the same pay rate as his former position.) (9) Following the special master's hearing, McCoy was reinstated and the special master, the only person to objectively examine the evidence, found he had not made wilful or reckless false statements and Rabun erred in determining he had.[8]

The trial court concluded that the issue of privilege was for the jury based solely upon *Kennedy v. Johnson*, 205 Ga. App. 220, 223 (3) (421 SE2d 746) (1992). There, the plaintiff Kennedy was a member of the East Point City Council whose conversation with the mayor in which he used derogatory language regarding defendant Johnson, the city manager, was recorded by defendant Hixson, the mayor's secretary. Hixson's and the mayor's relationship became strained and Hixson turned this tape over to Johnson. The tape was obtained by the Atlanta Journal-Constitution pursuant to the Open Records Act. Kennedy sued Hixson and Johnson for invasion of privacy based on Hixson's recording of the conversation and Johnson's release of the contents to the public. Hixson counterclaimed against Kennedy for oral defamation by making charges in reference to her profession and violation of her civil rights.

Although Kennedy sought summary judgment on the basis of privilege, his affidavit in support of it stated only that he had "*no recollection* of making any derogatory statements about . . . Hixson, but any statements [he] may have made were made in good faith during the council sessions in which his resignation, his recall, and his impeachment were discussed; or in response to media questions in connection with these matters." (Emphasis supplied.) *Kennedy*, supra at 223 (3).

---

[8] To the extent that McCoy presents other facts in support of his argument that were not presented below, we will not consider them. *Pfeiffer v. Dept. of Transp.*, 275 Ga. 827, 828 (2) (573 SE2d 389) (2002).

*Kennedy* does quote the statement that "[g]enerally the question of whether a communication was privileged is a jury question. *Cohen v. Hartlage*, [supra at] 849." In *Cohen*, however, the grant of summary judgment to the defendant was affirmed based upon the plaintiff's failure to satisfy his burden to come forward with evidence to defeat the privilege defense in light of *affirmative evidence of lack of malice* put forward by the defendant. Therefore, the statement quoted in *Kennedy* was dicta. In *Kennedy*, Kennedy, defendant in Hixson's counterclaim of defamation, was claiming the defense of privilege and seeking summary judgment based on it. He, however, failed to put forward affirmative evidence, but only averred good faith regarding statements he *might have made.* Summary judgment to him based on his defense of privilege was therefore properly denied. Both *Kennedy* and *Cohen* are consistent with our recent holding that whether one is a public official and

> "whether a showing of actual malice has been made are issues to be determined by the trial judge in the first instance, and thus both are particularly appropriate for [summary] resolution." [(Citation omitted.) *Sparks v. Thurmond*, 171 Ga. App. 138, 140-141 (1) (319 SE2d 46) (1984). See also *Pierce v. Pacific & Southern Co.*, 166 Ga. App. 113, 119 (2) (303 SE2d 316) (1983).]

*Jessup v. Rush*, 271 Ga. App. 243, 245 (609 SE2d 178) (2005).

"Conclusory allegations by the plaintiff of . . . malice . . . are insufficient in the absence of substantiating fact or circumstances, to raise a material issue for trial." *Morton v. Stewart*, 153 Ga. App. 636, 643 (2) (b) (266 SE2d 230) (1980). "Malice to avoid qualified privilege must be actual and with evil intent." *Land v. Delta Airlines*, 147 Ga. App. 738, 739 (7) (250 SE2d 188) (1978).

The nine "facts" pointed to by McCoy do not rise above the level of conclusory allegations and speculation and do not suffice to create a jury issue. *Jessup v. Rush*, supra; *Cooper-Bridges v. Ingle*, supra at 77 (4); *Culpepper v. Thompson*, 254 Ga. App. 569, 572 (3) (562 SE2d 837) (2002); *Brewer v. Schacht*, supra at 318 (4); *Dominy v. Shumpert*, supra.

Therefore, Rabun was entitled to summary judgment on his defense of privilege.

3. It is not necessary, in light of Division 2, for us to consider Rabun's remaining enumerations of error.

*Judgment affirmed in part in Case No. A05A0056. Judgment reversed in part in Case No. A05A0055. Phipps and Mikell, JJ., concur.*

DECIDED APRIL 12, 2005 —
RECONSIDERATIONS DENIED MAY 19, 2005 — 

*Elarbee, Thompson, Sapp & Wilson, Richard R. Gignilliat, Amy S. Auffant,* for appellants.

*Neal H. Howard, William D. James, Debra S. Robinson,* for appellee.