## A02A0887. CULPEPPER v. THOMPSON.
### (562 SE2d 837)

ELDRIDGE, Judge.

Plaintiff Charles M. Culpepper, Jr. sued Andrew Thompson, president of the Brooks County Farm Bureau ("BCFB"), for tortious interference with his employment as agency manager for Brooks County for Georgia Farm Bureau Mutual Insurance Company ("GFBMIC") claiming that Thompson requested at the direction of the directors of the BCFB that the plaintiff be transferred from Brooks County, which was done. Thompson answered and moved for summary judgment, which was granted. We affirm for several reasons.

The plaintiff failed to set forth a separate enumeration of error in his brief; however, from the brief, plaintiff contends that the trial court erred in granting summary judgment. We do not agree.

As agency manager for GFBMIC and its Brooks County agent for it, Culpepper had to maintain good relations with the local board of directors of the BCFB, because he had agreed to do so in writing and because BCFB had a vested business interest in the success of GFBMIC from insurance premiums generated in the county. BCFB, a nonprofit corporation, leased various services to GFBMIC, i.e., secretaries, equipment, and office space, and its board served as volunteer agents to sell GFBMIC insurance. The board of BCFB also approved, at GFBMIC's request, the placement of its agents in Brooks County. Therefore, it had a privileged relationship with the employment of Culpepper in Brooks County by GFBMIC.

During 1993, Culpepper began working as managing agent in Brooks County. In 1994 and 1995, the acting president of BCFB met

with the plaintiff, because of complaints made that he failed to return insureds' phone calls who were BCFB members. In August 1998, further complaints about failure to return calls, to be in the office, to make appointments, and to act as agent of the day required the plaintiff to meet with the defendant, a BCFB office secretary, a board member of BCFB, and plaintiff's supervisor, GFBMIC district manager Zack Williams. Again in December 1998, the plaintiff, Williams, the defendant, and a BCFB board member met over the continued problems of the plaintiff as agency manager. However, on March 30, 1999, the entire BCFB board unanimously voted to request GFBMIC transfer the plaintiff from Brooks County, because he had failed to adequately serve their members as insureds. The defendant was directed by the board to communicate the request to GFBMIC. Thompson had no personal differences with Culpepper. Thompson's involvement was entirely in his capacity as president of BCFB.

(a) *Immunity as president of a board of directors of a nonprofit organization.*

As president of BCFB, Thompson, as an uncompensated officer of a nonprofit farm bureau, was immune from civil liability for any good faith acts or omissions, whether ministerial or discretionary, arising out of official actions and duties, when injury has not been caused by his wilful or wanton misconduct. OCGA § 51-1-20 (a); *Atlanta Airmotive v. Royal*, 214 Ga. App. 760, 761 (449 SE2d 315) (1994) (additional immunity to sovereign immunity which covers both ministerial and discretionary actions); *Dyches v. McCorkle*, 212 Ga. App. 209, 215-216 (2) (441 SE2d 518) (1994); *Johnson v. MARTA*, 207 Ga. App. 869, 871-872 (2) (429 SE2d 285) (1993). "Bad faith is not simply bad judgment or negligence, but it imports a dishonest purpose or some moral obliquity, and implies conscious doing of wrong, and means breach of known duty through some motive of interest or ill will." (Citations and punctuation omitted.) *Dyches v. McCorkle*, supra at 216. Further, for purposes of this statute, "[m]alice may consist in personal spite or in general disregard of the right consideration of mankind, directed by chance against the individual injured." (Citations omitted.) Id. Wilful and wanton conduct does not encompass negligence, because "[w]anton and wilful conduct differs from gross negligence. Wilful conduct is based on an actual intention to do harm or inflict injury; wanton conduct is that which is so reckless or so charged with indifference to the consequences as to justify the jury in finding a wantonness equivalent in spirit to actual intent." (Citation and punctuation omitted.) Id. at 217. Immunity under this statute extends to public, charitable, or nonprofit institutions and organizations generally, including BCFB as a nonprofit corporation. *Bunkley v. Hendrix*, 164 Ga. App. 401, 402-403 (296

SE2d 223) (1982). Thus, Thompson's good faith performance of his duty in communicating the request of the board to GFBMIC entitled him to immunity. *Dyches v. McCorkle*, supra. Thompson's actions arose out of his performance of his official duties as president of BCFB. *Zarach v. Atlanta Claims Assn.*, 231 Ga. App. 685, 687-688 (1) (500 SE2d 1) (1998). Thus, Thompson was entitled to the statutory immunity.

Further, Thompson in good faith in the exercise of a duty, either public, private, or speaker's interest, made the communication to GFBMIC as president of BCFB; thus, he came within the privilege of OCGA § 51-5-7, which also applies as a defense to tortious interference with contractual relations. See *Brewer v. Schacht*, 235 Ga. App. 313, 318 (4) (b) (509 SE2d 378) (1998) (public duty — OCGA § 51-5-7 (1)); *NationsBank v. SouthTrust Bank*, 226 Ga. App. 888, 892 (1) (A) (1) (487 SE2d 701) (1997) (speaker's interest — OCGA § 51-5-7 (3)). Thus, to overcome such privilege, plaintiff "must show actual malice in making the statement[ ]." (Citation omitted.) *Brewer v. Schacht*, supra at 318.

(b) *Employment at will provides no basis for tortious interference with contract.*

Culpepper's employment was for an indefinite period of time and, thus, was employment at will, terminable, with or without cause, at any time by GFBMIC. OCGA § 34-7-1; *Burton v. John Thurmond Constr. Co.*, 201 Ga. App. 10, 11 (410 SE2d 137) (1991). Therefore, plaintiff had no enforceable contract rights with which to interfere so as to give rise to a breach of contract and damages; thus, since the underlying contract could not be enforced by him as an employment at will, then, the tortious conduct of a third party does not give rise to an action for inducing a breach of the employment contract. *Moore v. BellSouth Mobility*, 243 Ga. App. 674, 676 (1) (534 SE2d 133) (2000); *Johnson v. MARTA*, supra at 870 (1).

(c) *Elements of tortious interference with contract unsupported by evidence.*

The elements of tortious interference with a contract consist of: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of a contractual obligation or caused a party or third party to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff. *Disaster Svcs. v. ERC Partnership*, 228 Ga. App. 739, 740 (492 SE2d 526) (1997).

(1) Thompson at all times acted with privilege as president of BCFB in its ongoing, interrelated business relationship with GFBMIC. Privilege means a legitimate or bona fide economic interest

of the defendant or a legitimate relationship of the defendant with the contract, which causes the defendant not to be considered a stranger, interloper, or meddler to the contract. *Disaster Svcs. v. ERC Partnership*, supra at 741. Thus, as a matter of public policy, the defendant had a right to involve himself in the contract. Id.; see also *Johnson v. MARTA*, supra at 872 (2). Moreover, in similar situations, where there was no malicious intent, directors of local farm bureaus were authorized to participate in discharge of a GFBMIC agent without liability for tortious interference with contract. *Singleton v. Itson*, 192 Ga. App. 78, 80 (383 SE2d 598) (1989).

(2) There was no evidence of a wrongful act on the part of Thompson. "[A]*n independent wrongful act* is required as well as an injury [and malice]." (Citations and punctuation omitted; emphasis in original.) *Singleton v. Itson*, supra at 79. "Improper actions constitute conduct wrongful in itself; thus, improper conduct means wrongful action that generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions." (Citations and punctuation omitted.) *Disaster Svcs. v. ERC Partnership*, supra at 741-742.

(3) In tortious interference with contract actions, "[m]alice, as herein used, is a term to be given a liberal meaning; malicious or maliciously means any unauthorized interference, or any interference without legal justification or excuse." (Citations omitted.) *Renden, Inc. v. Liberty Real Estate Ltd. Partnership III*, 213 Ga. App. 333, 334 (2) (444 SE2d 814) (1994); accord *Cumberland Center Assoc. v. Southeast Mgmt. &c. Corp.*, 228 Ga. App. 571, 581 (3) (b) (492 SE2d 546) (1997), overruled on other grounds, *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. 604, 610 (8) (503 SE2d 278) (1998).

There exists no evidence of malice, and no inference, reasonable or otherwise, permits the drawing of an inference of malice from the facts of this case. "Unsupported inferences or conjecture regarding a defendant's motivation [does] not suffice to show malice." *Brewer v. Schacht*, supra at 318 (4) (b). Where privilege has been shown under OCGA § 51-5-7 (3), the plaintiff must show actual malice to overcome the privilege. Id. Thompson merely carried out the unanimous will of the board without the intent to injure Culpepper in requesting his transfer from Brooks County where he failed to adequately serve their members. Culpepper admitted that he knew Thompson's actions were as spokesman for the entire board.

(4) Thompson and the board merely expressed a request for Culpepper's transfer to GFBMIC, which did not cause a breach of contract. First, if a legitimate complaint made in good faith and based upon the acts or omissions of an employee, who had failed or refused to properly perform the duties of his job, could constitute tortious

interference with a contract of employment, then this would chill any complaints about service by the public, which would be contrary to public policy and the public good. See *Singleton v. Itson*, supra at 79-80. Secondly, in this case, Culpepper was an employee at will, subject to termination at any time, with or without cause. Id. Thus, he had no enforceable contract for future employment that could be breached.

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED MARCH 28, 2002.

*Farkas & Ledford, Leonard Farkas*, for appellant.
*Groover & Childs, Duke R. Groover*, for appellee.