A04A0669. CAREY STATION VILLAGE HOME OWNERS ASSOCIATION, INC. v. CAREY STATION VILLAGE, INC.

(602 SE2d 233)

ADAMS, Judge.

Carey Station Village Home Owners Association, Inc. appeals from a judgment entered by the trial court in favor of Carey Station Village, Inc., on its counterclaim asserting tortious interference with contractual and business relations.

Carey Station Village, Inc., a developer, purchased real estate near Lake Oconee in 1987 to develop a residential subdivision known as Carey Station Village. The subdivision was originally designed to contain 227 lots. Although the developer continued to own a number of these lots, it relinquished control of the subdivision to the homeowners association in 1994. In 1999, the developer began to sell off some of its lots that had been improved with double-wide, modular homes and it provided owner financing for a number of the purchases. The developer sold over one-half of its lots within the first three months of advertising them for sale. But later the developer was required to foreclose on 16 of the 21 homes that it had sold.

The homeowners association brought suit against the developer in 2001 to recover dues and assessments it claimed were owing on the developer's remaining lots. The developer and the homeowners association had been involved in an earlier lawsuit that resulted in a settlement in which the developer forgave a promissory note from the association, and in exchange, the association released the developer from any liability for association dues or assessments through the year 1999. The developer paid all dues and assessments owing in 2000, but did not make any payments during the subsequent years. After this lawsuit was filed, however, the developer acknowledged owing certain dues and assessments for 2001 and 2002 and paid into the registry of the trial court the dues and assessments on seventeen lots for the year 2001 and for the eight lots the developer admitted it still owned in 2002.

The developer also filed a counterclaim asserting tortious interference with contractual or business relations and breach of contract. The developer's counterclaim alleged that actions by the homeowners association caused a number of its purchasers to default on their promissory notes and affected the developer's ability to sell its

remaining lots. The developer sought to recover damages resulting from the foreclosures on his property as well as damages he alleged were incurred when he was sold his remaining 27 unimproved lots at a price below market value.

The case was tried to a jury. The trial court granted the homeowners association's motion for directed verdict on the breach of contract claim, but denied the motion on the tortious interference claim. The jury found in favor of the homeowners association on its claim and awarded $40,527.09. The jury also found in favor of the developer on its counterclaim and awarded $211,250. The trial court entered a judgment in favor of the developer in the amount of $170,722.91, the net amount of the verdict. The trial court denied the homeowners association's motions for new trial and for judgment notwithstanding the verdict, resulting in this appeal.

1. The homeowners association asserts that the trial court erred in failing to grant its directed verdict on the developer's claim of tortious interference with contractual/business relations. The association contends that it is not liable because it acted with privilege and because it was not a stranger to the relationship between the developer and the purchasers.

To establish a claim of tortious interference with a contract or business relations the plaintiff must prove:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of a contractual obligation or caused a party or [a] third party to discontinue or fail to enter into an anticipated . . . relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

(Citation omitted.) *Culpepper v. Thompson*, 254 Ga. App. 569, 571 (c) (562 SE2d 837) (2002). See also *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. 604, 608 (503 SE2d 278) (1998). "Privilege" in this context means "a legitimate or bona fide . . . interest of the defendant or a legitimate relationship of the defendant with the contract, which causes the defendant not to be considered a stranger, interloper, or meddler to the contract." (Citation omitted.) *Culpepper v. Thompson*, 254 Ga. App. at 571-572 (c) (1).

In *Culpepper*, for example, we held that the president of a county farm bureau could not be liable for tortious interference with the employment contract between Georgia Farm Bureau Mutual Insurance Company and one of its agents because the president had a legitimate interest in that contract, and thus acted with privilege in requesting the agent's transfer to another county. Id. at 572 (c) (1).

This Court reached this conclusion based upon the fact that the agent was required to maintain good relations with the local board of directors of the farm bureau, because the farm bureau had a vested business interest in the success of the insurance company from premiums generated in the county and the farm bureau's board also approved the placement of the agent within the county. Id. at 569.

Here, the evidence at trial showed that each subdivision lot, including those owned by the developer, were subject to "An Amended and Restated Declaration of Protective Covenants" governing the subdivision. That document was signed by both the developer and the homeowners association. Under these protective covenants, the homeowners association was granted the power to enforce the covenants and collect dues and assessments. And the Georgia Property Owners' Association Act gives the covenants the force of law. OCGA § 44-3-223. Thus, each of the warranty deeds executed in connection with the developer's sale of its lots recite that the property is subject to these protective covenants. Accordingly, the homeowners association acted with privilege when it took action as outlined under the protective covenants, such as attempting to collect dues and assessments.

But even if the actions of the homeowners association exceeded this privilege, as the developer asserts, the tortious interference claim fails because the association is not a stranger to the relationship between the developer and the purchasers. To be liable for interference with contractual or business relations, "one must be a stranger to both the contract and the business relationship giving rise to and underpinning the contract. In other words, all parties to a comprehensive interwoven set of contracts are not liable for tortious interference with any of the contracts or business relationships." (Footnotes and emphasis omitted.) *Galardi v. Steele-Inman*, 266 Ga. App. 515, 521 (3) (597 SE2d 571) (2004).

Under the circumstances here, we cannot say that the homeowners association was a stranger to the contracts or relationship between the developer and the purchasers of the developer's lots. Rather, they are all parties to a "comprehensive interwoven set of contracts." Therefore, we find that the homeowners association cannot be liable for tortious interference with the contracts or business relationship between the developer and the lot purchasers. See *Galardi v. Steele-Inman*, 266 Ga. App. 521 (3); *Cox v. City of Atlanta*, 266 Ga. App. 329, 332 (1) (596 SE2d 785) (2004); *Mulligan v. Brunswick Mem. Hosp. Auth.*, 264 Ga. App. 39, 40 (3) (589 SE2d 851) (2003). In reaching this conclusion, we are mindful of our Supreme Court's recent approval of our line of cases that "reduce[s] the number of entities against which a claim of tortious interference with [a]

contract may be maintained." *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. at 610 (2).

Accordingly, we find that the trial court erred in denying the homeowners association's motions for j.n.o.v. and for new trial on this ground, and we reverse.

2. In light of our holding in Division 1, we need not reach the homeowners association's remaining enumerations of error.

*Judgment reversed. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED JULY 12, 2004 —

*Freeman, Mathis & Gary, T. Bart Gary, Stuart W. Gray, J. Hue Henry*, for appellant.

*Sanders & Smith, Russell W. Smith, Joshua D. Huckaby*, for appellee.

