**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 14, 2016**

# In the Court of Appeals of Georgia

A16A1304. ROWELL v. PHOEBE PUTNEY MEMORIAL RI-057 HOSPITAL, INC. et al.

RICKMAN, Judge.

Esperanza Rowell filed suit against Phoebe Putney Memorial Hospital, Inc. ("the hospital") and one of its employees, Doug Patten, M. D. Rowell asserted claims against both defendants for tortious interference with her existing contractual relationship, defamation, violation of the hospital bylaws, violation of a temporary restraining order and/or preliminary injunction, punitive damages, and attorney fees. Rowell now appeals from an order of the trial court granting summary judgment to the hospital and Patten as to Rowell's claims for tortious interference with her existing contractual relationship, defamation, violation of the hospital bylaws, violation of a temporary restraining order and/or preliminary injunction. Rowell

contends the trial court erred by granting summary judgment in favor of the hospital on her claims for tortious interference with her employment contract and violation of the hospital bylaws. For the following reasons, we affirm.

> To prevail at summary judgment, the moving party must demonstrate that there is no genuine issue of material fact and that the evidence and all reasonable inferences and conclusions drawn therefrom, viewed in the nonmovant's favor, warrant judgment as a matter of law. We review de novo the trial court's ruling on a motion for summary judgment.

(Citation and punctuation omitted.) *Hart v. Sirmans*, 336 Ga. App. 212 (784 SE2d 67) (2016).

So viewed, the record shows that Rowell had a verbal agreement to work for SOWEGA Anesthesia, LLC ("SOWEGA") as an anesthesiologist on nights and weekends. SOWEGA was the exclusive provider of anesthesia services for the hospital and Rowell held staff privileges there.

Patten was employed by the hospital and served as Chief Medical Officer and Vice President of Medical Affairs. In his role as Vice President of Medical Affairs, Patten had the authority to summarily suspend physicians staff privileges at the hospital.

On May 20, 2013, Patten met with one of Rowell's employers regarding concerns about Rowell's patient care. Following that conversation, Rowell's employer called Rowell on the phone and told her that Patten had told him to stop Rowell from coming to work at the hospital or if she did come to work, her privileges would be suspended and she would be physically removed from the hospital. Either later that day or the following day, Rowell's employer called her back and told her, "I didn't fire you"; " you need to fight this." Rowell was unsure of what to do, but asked her employer to gather up her things at the hospital and she picked up her last paycheck. On the day after first speaking with her employer, Rowell cancelled her malpractice insurance policy.[1]

1. Rowell contends that the trial court erred in granting summary judgment against her and in favor of the hospital and Patten on her claim for tortious interference with her employment contract. Specifically, Rowell argues that the trial court erred by holding that there was not a genuine issue of material fact regarding whether Patten, as an agent of the hospital, acted with malice when he summarily suspended her staff privileges without speaking to her first.

---

[1] Notes from the insurance carrier reflect that Rowell indicated that she was retiring. Rowell was 77 years old at the time.

The elements of tortious interference with a contract consist of: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of a contractual obligation or caused a party or third party to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

(Citation omitted.) *Culpepper v. Thompson*, 254 Ga. App. 569, 571 (c) (562 SE2d 837) (2002).

Pretermitting whether the trial court erred in holding that the hospital and Patten were non-strangers to Rowell's contract with SOWEGA and thus were acting with privilege, Rowell has failed to show any evidence of malice on the part of the hospital or Patten.

"In tortious interference with contract actions, malice, as herein used, is a term to be given a liberal meaning; malicious or maliciously means any unauthorized interference, or any interference without legal justification or excuse." (Citations and punctuation omitted.) *Culpepper*, 254 Ga. App. at 572 (c) (3). Rowell argues that because Patten expressed his concerns about Rowell to her employer instead of to Rowell herself a jury question exists regarding whether the hospital and Patten were acting with malice.

4

"Guesses or speculation which raise merely a conjecture or possibility are not sufficient to create even an inference of fact for consideration on summary judgment." (Punctuation and footnote omitted.) *Sumter Regional Hosp., Inc. v. Healthworks, Inc.*, 264 Ga. App. 78, 82 (1) (589 SE2d 666) (2003). Both Patten and Rowell acknowledge that they did not know each other at the time of the events that gave rise to this action. Patten testified that he went to meet with Rowell's employer to tell him that the hospital, through the medical staff, was going to initiate an investigation regarding Rowell's patient care. At the time, Rowell's employer was in a leadership role at the hospital and was the only active physician member of the anesthesiology group supervising Rowell. Furthermore, the trial court noted in its order that, "[a]lthough a federal temporary restraining order was in place at the time of the events in question, nothing in that order prevented or prohibited defendants from utilizing the investigatory and disciplinary procedures set forth in its [bylaws]. . . . The record shows said communications were made in good faith as part of the Medical Director's duties to uphold [the hospital's] interest in patient safety."

Moreover, while Patten had the authority to summarily suspend Rowell's privileges, her privileges were never suspended. Patten testified that had Rowell decided to return to work, an investigation would have been initiated and Rowell's

5

privileges would have been summarily suspended. Instead, after Rowell was told by her employer that she could decide to not return to the hospital or to come to work and have her privileges summarily suspended, she testified that she was unsure of what to do but ultimately chose to have her employer pack up her things and picked up her last paycheck.

"Since the [h]ospital [and Patten] [have] shown that an essential element of [Rowell's] claim for tortious interference could not be proven under any theory, there remains no genuine issue of material fact to be tried by the jury on this claim, and the [h]ospital [and Patten] [are] entitled to summary judgment as a matter of law." *Sumter Regional Hosp.*, 264 Ga. App. at 83 (1). See *Meadow Springs, LLC v. IH Riverdale, LLC*, 323 Ga. App. 478, 480 (1) (a) (747 SE2d 47) (2013) (trial court properly granted summary judgment on tortious interference with contractual relations claim where plaintiff failed to point to specific evidence of malice); see also *Culpper*, 254 Ga. App. at 572 (c) (3) (Summary judgment proper on tortious interference with contractual relations claim where "[t]here exists no evidence of malice, and no inference, reasonable or otherwise, permits the drawing of an inference of malice from the facts of this case. Unsupported inferences or conjecture regarding a defendant's motivation does not suffice to show malice.") (citation and punctuation

6

omitted); *Renden, Inc. v. Liberty Real Estate Ltd. Partnership III*, 213 Ga. App. 333, 335 (2) (c) (444 SE2d 814) (1994) ("A grant of summary judgment must be affirmed if it is right for any reason.") (citations omitted).

2. Rowell contends that the trial court erred by granting summary judgment against her and in favor of the hospital and Patten on her claim for violation of the hospital bylaws. Specifically, Rowell argues that a genuine issue of material fact exists as to whether Patten secured votes from the medical executive committee to suspend Rowell's privileges prior to meeting with Rowell's employer.[2]

A hospital has a legal duty to follow its existing bylaws and any alleged breach of that duty can be asserted as a cause of action under OCGA § 51-1-6.[3] *St. Mary's Hosp. v. Radiology Professional Corp.*, 205 Ga. App. 121, 127 (3) (c) (421 SE2d 731) (1992). In this case, it is undisputed that Patten had the authority, under the hospital bylaws, to summarily suspend physicians' staff privileges at the hospital.

---

[2] Rowell also contends that a genuine issue of material fact exists as to whether she was offered any choice to return to work. As discussed supra, there is no issue of material fact as to whether Rowell was offered a choice to return to work.

[3] OCGA § 51-1-6 provides that "[w]hen the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby."

Pursuant to the bylaws, the suspension would be effective immediately and within 72 hours the Executive Committee would meet and "[u]nless the Executive Committee terminates the suspension, the practitioner is entitled to hearing rights under these bylaws."

Rowell asserts that there is a genuine issue of material fact as to whether Patten consulted with members of the Executive Committee prior to meeting with Rowell's employer and thus violated Rowell's rights under the bylaws. The trial court thoroughly and correctly addresses this issue in its order:

> Although there may be an evidentiary issue as to what exactly [Rowell's employer] communicated to [Rowell] about his conversation with [Patten], it is clear from the record that a summary suspension of [Rowell's] staff privileges would have been imposed if she had chosen to return to work; however, it is also clear [Rowell] unilaterally made the decision not to return to work, and, therefore, a summary suspension was never imposed. Within a day or two of her making this decision, [Rowell] cancelled her malpractice coverage which disqualified her from having hospital privileges under the Medical Bylaws.

> There is simply no evidence in the record showing [Patten] ever imposed a summary suspension of [Rowell's] privileges. While it may have been his intent to do so had [Rowell] chosen to continue her

8

services as an anesthesiologist, no issue exists as to the fact that [Rowell] made the choice not to return to work and face the probable summary suspension, the triggering event which would have afforded her a right to notice and a fair hearing per the terms of the Medical Bylaws. As there was no summary suspension of her privileges, [Rowell's] entitlement to notice and a hearing as prescribed in the Bylaws was never triggered.

[Rowell] further contends that any pre-suspension communications which may have taken place between [Patten] and members of the Medical Executive Committee, without first giving [Rowell] notice and an opportunity to be heard, also amounted to a violation of the Bylaws. . . . [Rowell] may have believed any hearing to which she might have been entitled had she been summarily suspended would have been tainted if [Patten] had in fact had pre-suspension communications with members of the Medical Executive Committee; however, she has no cause of action against [the hospital and Patten] over the alleged tainted nature of such a theoretical hearing when no such hearing was ever held because of her unilateral decision to resign rather than face a summary suspension which would have triggered the right to such a hearing.

We agree. Therefore, the trial court did not err by granting summary judgment in favor the hospital and Patten. See generally *Mulligan v. Brunswick Memorial Hosp. Authority*, 264 Ga. App. 39, 40 (4) (589 SE2d 851) (2003) (trial court properly

granted summary judgment in favor of the hospital on physician's claim for breach of the hospital's bylaws).

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur*.