**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**October 23, 2024**

# In the Court of Appeals of Georgia

A24A0868, A24A0869. OTHMAN v. NAVICENT HEALTH INC. et al.; and vice versa.

GOBEIL, Judge.

These appeals concern an ongoing dispute between Mufid Othman, M.D., and Navicent Health, Inc. f/k/a Central Georgia Health Systems, Inc. ("Navicent"), and Medical Center of Central Georgia, Inc. (the "Hospital") (collectively referred to as the "Defendants"). Dr. Othman sued the Defendants for a variety of claims, mostly related to the Defendants' assignment of patients to certain physician staffing groups at the Hospital's emergency room. During the course of the litigation, the trial court issued three orders disposing of some of Othman's claims and allowing others to proceed. Both sides have appealed.

In Case No. A24A0868, Othman asserts that the trial court erred in (1) dismissing his claim for trespass; (2) concluding that he cannot pursue certain claims on behalf of his physician group even though it assigned rights to him; (3) its application of the economic loss rule to grant partial summary judgment to the Defendants; and (4) granting summary judgment to the Defendants on a claim related to the Hospital executing a contract with a competing physician group in violation of its Bylaws and/or internal Rules and Regulations.

In their cross-appeal in Case No. A24A0869, the Defendants argue that the trial court erred in (1) denying their motion for summary judgment on Othman's remaining claims concerning the assignment of patients at the emergency room; (2) denying their motion to dismiss Othman's negligence claim; and (3) denying their motion for summary judgment on Othman's tangential claims for injunctive relief, attorney fees and expenses, and punitive damages, which must fail if summary judgment is properly granted on his substantive claims.

For the reasons that follow, we affirm in Case No. A24A0868, as the trial court correctly dismissed Othman's trespass action and granted summary judgment to the Defendants on some of Othman's other claims, but we reverse in Case No. A24A0869

2

(the cross-appeal), as the Defendants were entitled to summary judgment in full on the remainder of Othman's claims.

*Background Facts*

The record in this case shows that Dr. Othman is a board certified nephrologist and internal medicine doctor who has clinical privileges at the Hospital. The Defendants Navicent and the Hospital are non-profit corporate entities that operate the Hospital. The Hospital has "Medical Staff" consisting of physicians and other healthcare providers who practice there. The Medical Staff is organized under a set of "Bylaws," and the Hospital operates under its internal "Rules and Regulations."

The Rules and Regulations set out two types of patients who may present in the Hospital's Emergency Department ("ED"): "preassigned patients" and "unassigned patients." Preassigned patients are those who present to the ED with a preexisting relationship with a physician (who is referred to as "an assigned physician"). If the ED doctor determines that the patient already has an assigned physician, then the ED doctor is to contact that assigned physician or his or her "call partner" if the patient requires a consult or admission to the hospital.

Unassigned patients are those who present to the ED without an assigned physician. For unassigned patients, the ED doctor is to "utilize[ ] the department-specific call policy"[1] to determine who will assume responsibility for their care. It is up to the ED doctors (who are independent contractors) to determine whether a patient is categorized as preassigned or unassigned, and generally the ED doctors rely on the patient or their support people to answer questions to make that determination.

There are two competing hospitalist groups at the Hospital (groups of physicians who may treat admitted patients) – Magna Care Medical Specialists, LLC ("Magna Care"), of which Othman is a member (and an owner), and Cogent Healthcare of Macon, LLC, d/b/a QuantumHC ("Quantum").

Magna Care has contractual agreements with many physicians in the Macon area to serve as a "call partner" whenever those physicians are contacted by the ED. The parties refer to these as "call coverage" arrangements/agreements. Essentially,

---

[1] Neither party points this Court to a particular "department-specific call policy" in the record. The Rules and Regulations refer to a list of daily on-call physicians and state that each department should maintain its own specific call policy and notify the ED of its call schedule. According to Othman, these call policies for the ED involve a list of "on-call" physicians who the ED doctor is supposed to rotate through to consult on unassigned patients.

this means that when a patient presents at the ED and names an assigned physician with whom Magna Care has a call coverage agreement, the ED is supposed to contact Magna Care so that a Magna Care physician can consult or admit the patient as a preassigned patient. Or, if one of those call partner physicians is "on call" and assigned an unassigned patient, the ED is supposed to contact Magna Care to consult on that unassigned patient.

In 2016, the Defendants entered an exclusive hospitalist program services agreement with Quantum. This contract provided that Quantum-associated physicians were to be assigned all unassigned patients who presented at the ED from that point onward, thus excluding the Magna Care-associated physicians from treating the unassigned patient population. According to Othman, this change has significantly diminished the number of patients being treated by Magna Care physicians at the Hospital.

*Procedural History*

In April 2017, Othman filed his original action against the Defendants. His initial claims alleged that the Hospital's contract with Quantum concerning unassigned patients violated the Bylaws and/or Rules and Regulations adopted by the

5

Hospital. Othman sought a declaration that the Hospital's "Rules and Regulations are valid and enforceable as written." He also sought an injunction to enjoin the Defendants from "failing to follow the Bylaws and Rules and Regulations."

The primary legal theory underlying Othman's claims is based on *St. Mary's Hosp. of Athens, Inc. v. Radiology Professional Corp.*, 205 Ga. App. 121 (421 SE2d 731) (1992) (physical precedent only as to Division 2, which is not at issue in this appeal). Although a hospital generally has broad power to control the administrative, managerial, and operational functions of its facility and staff, hospitals are also bound by their bylaws "concerning staff privileges." Id. at 127 (3) (c). Under *St. Mary's* (discussed further below), a physician is entitled to "assert a cause of action in tort against [a hospital] for failure to follow existing bylaws with regard to termination of his staff privileges." Id. Othman asserted that *St. Mary's* and related cases empowered the court to require the Hospital to follow its existing procedures — essentially asking the court to order the Hospital to return to the previous call rotation system for unassigned patients so that Magna Care physicians would continue to receive unassigned patients.

Othman amended his complaint several times. As relevant here, in December 2018, Othman added a claim for a declaration and damages based on "financial harm to him and Magna Care caused by the Defendants'" failure to follow the preassigned patient rule. Othman asserted that thousands of unassigned and preassigned patients (whose treatments represent millions of dollars in revenue) were incorrectly assigned to Quantum physicians when they instead should have been assigned to Magna Care physicians via Magna Care's call coverage agreements. Othman points to an assignment from Magna Care granting him "all right and standing to any claims" Magna Care and its physicians may have against the Defendants "for violation of the [Bylaws and/or Rules and Regulations] concerning the assignment of [p]reassigned [p]atients or [u]nassigned [p]atients seen in the [ED]." Othman asserts that this assignment grants him standing to pursue damages on behalf of not only himself, but the Magna Care physician group as a whole.

Othman then filed a consolidated and restated complaint in March 2020. Counts 1-3 stated *St. Mary's* claims regarding the unassigned patient rule; Count 4 stated a *St. Mary's* claim regarding the preassigned patient rule; and Count 5 sought punitive damages.

The Defendants moved for summary judgment, and the court held a hearing on October 27, 2020. On March 10, 2022, the trial court granted in part and denied in part summary judgment to the Defendants. First, the trial court granted summary judgment to the Defendants for Othman's *St. Mary's* claim concerning unassigned patients. The court found that the Defendants were permitted to enter into their contract favoring Quantum physicians, as hospitals generally may enter into exclusive provider contracts, and Othman did not show that he was denied any procedural protections to which he was entitled.

However, the court allowed Othman's *St. Mary's* claim concerning preassigned patients to proceed, finding that there was a question of fact as to whether the Defendants "went beyond the permitted scope of authority regarding preassigned patients."

In July 2022, Othman filed another "Restated Complaint" in which he asserted (1) a "*St. Mary's* Tort" claim concerning preassigned patients; (2) trespass; (3) public nuisance; (4) negligence; (5) tortious interference;[2] (6) injunctive relief; (7) attorney fees and expenses; (8) punitive damages; and (9) a claim for "unassigned patients,"

---

[2] This claim was later voluntarily dismissed by Othman.

which sought damages for the Hospital's failure to follow its rules concerning unassigned patients. Notably, Othman's trespass claim was based on "a continuing trespass of personal property rights in his and Magna Care's existing call coverage arrangements . . . because a call coverage arrangement creates a chose in action which is a protectable property right." His negligence claim was based on the Defendants' "negligent oversight" of various physicians who failed to respect and implement the preassigned patient rule. The Defendants moved to dismiss in part this new complaint.

On October 20, 2022, the trial court granted in part and denied in part the Defendant's partial motion to dismiss the action. The trial court first dismissed Othman's trespass claim, finding that neither the Hospital's Bylaws and staff privileges, nor the call coverage agreements, created a property interest upon which Othman could raise a trespass claim. The trial court also dismissed Othman's nuisance claim (which Othman does not contest on appeal) and the *St. Mary's* claim concerning unassigned patients, because it had already granted summary judgment on that claim for the Defendants in its March 10, 2022 order. The trial court denied the Defendants' motion to dismiss Othman's negligence claim.

The Defendants also moved for summary judgment on any remaining claims. After another hearing, on May 10, 2023, the trial court granted in part and denied in part this motion. The trial court disagreed with Othman that he was permitted to assert any *St. Mary's* claim on Magna Care's behalf, finding that *St. Mary's* recognized an actionable breach-of-duty claim only for individual physicians with staff privileges at a hospital. And because an assignment of rights cannot grant rights that do not already exist, the court explained that Magna Care had no standing to raise a *St. Mary's* claim, either independently or through Othman.

The court then determined that, because the bulk of Othman's substantive claims were grounded in the violation of the call coverage agreements, to which the Defendants were not party, Georgia's economic loss rule barred most of Othman's claimed damages. However, the court found that, to the extent Othman sought "to recover his own property, questions of fact still remain." Accordingly, the court granted in part and denied in part the Defendants' motion for summary judgment based on the economic loss rule. Additionally, the court found that Othman had not provided the kind of evidence to support any lost profit damages, and there were "no

triable issues" on any claims for lost profits associated with the preassigned patient rule.

> Based on these findings, the court summarized that Othman

> may only recover damages for [his *St. Mary's*] claim for disputed Preassigned Patients covered by a call coverage agreement in place between an assigned physician and Dr. Othman specifically, not Magna Care. [Othman] cannot claim damages for Preassigned Patients covered by Magna Care's call coverage agreements because then he would necessarily be relying on Magna Care's rights, but as explained above, Magna Care does not have any *St. Mary's* rights of its own.

Subject to those limitations, the court denied the remainder of the Defendants' motion for summary judgment on Othman's *St. Mary's* claim.

Finally, the court denied the Defendants' summary judgment motion as to Othman's negligence claim, finding in pertinent part that there remained questions of fact as to whether the Defendants or their employees acted arbitrarily, capriciously, unreasonably, or discriminatorily by not enforcing and applying the Bylaws or Rules and Regulations. Further, the court found that issues of disputed fact remained as to whether Othman would be entitled to punitive damages, injunctive relief, or attorney fees on his surviving claims. These appeals followed.

1. Taking the parties' claims out of order and grouping them instead by the issues we find dispositive on appeal,[3] we first consider Othman's *St. Mary's* claims. Othman asserts that the trial court erred in its rulings in granting partial summary judgment to the Defendants on his claims based on the preassigned patient rule and in finding that he did not have a cognizable *St. Mary's* claim regarding the Defendants' failure to follow the unassigned patient rule. The Defendants assert in their cross-appeal that Othman has no cognizable *St. Mary's* claims at all and the trial court erred by not granting them summary judgment in full as to these claims. We turn first to the case in question and its progeny.

In *St. Mary's*, a hospital, St. Mary's Hospital of Athens, had a longstanding contract with a physician, Larry Cohen, and his professional corporation, Radiology Professional Corporation ("RPC"), such that RPC was the exclusive provider of radiological services at St. Mary's. 205 Ga. App. at 122. The contract stated that either party could terminate the contract without cause upon providing proper notice,

---

[3] *Foster v. Morrison*, 177 Ga. App. 250, 250 (1) (339 SE2d 307) (1985) ("For convenience of discussion, we have taken the enumerated errors out of the order in which appellant has listed them and have grouped together related enumerations.")

and St. Mary's believed the contract to mean that Cohen's staff privileges at the hospital would be revoked upon the termination of the contract. Id. St. Mary's also was governed by its bylaws, promulgated pursuant to Georgia regulatory law, which provided for notice and a hearing before terminating the staff privileges of a physician (and appellate review thereafter). Id.

St. Mary's desired to terminate its contract with Cohen and RPC and terminate Cohen's staff privileges. 205 Ga. App. at 122. St. Mary's filed an action seeking a declaration as to its rights to take such actions and enter into an exclusive contract with another radiology group, and Cohen filed counterclaims. Id. Relevant to the issues here, we found that "because hospitals have the authority to establish and revise rules and regulations governing the appointment of physicians to the hospital staff, medical staff bylaws alone do not create any contractual right to continuation of staff privileges." Id. at 126 (3) (b). Thus, Cohen had no cognizable contract claim against St. Mary's. Id.

However, we found that Cohen did have a cognizable claim in tort. 205 Ga. App. at 126-128 (3) (c). Pointing to OCGA § 51-1-6 (concerning when the breach of a legal duty gives rise to a cognizable action), and given that hospitals cannot

arbitrarily or capriciously deprive physicians of their staff privileges,[4] we found that "a public hospital authority cannot abridge or refuse to follow its existing bylaws concerning staff privileges" (and we subsequently extended such principle to private hospitals such as St. Mary's). Id. at 127 (3) (c). And, although St. Mary's had the right to enter into an exclusive contract with a competing radiology group and terminate Cohen's privileges, it could not do so "in a manner inconsistent with the staff bylaws." Id. at 127-128 (3) (c). Accordingly, Cohen's tort claim against St. Mary's was allowed to proceed. Id. at 128 (3) (c).

We agree with the Defendants that the right of action recognized in *St. Mary's* is narrow, and we decline to adopt Othman's attempt to expand it. Although he mentions the Hospital's Bylaws, Othman's claims are premised on the Defendants violating the unassigned and preassigned patient rules — which are set forth in the Rules and Regulations, not the Bylaws. Nothing in *St. Mary's* provides a cause of action when a hospital fails to follow its internal Rules and Regulations, and we have never before applied *St. Mary's* in such a way. Indeed, well established principles of

---

[4] For this principle, we relied upon *Dunbar v. Hosp. Auth. of Gwinnett County*, 227 Ga. 534, 540-541 (1) (182 SE2d 89) (1971), and *Cobb County-Kennestone Hosp. Auth. v. Prince*, 242 Ga. 139, 146 (1) (249 SE2d 581) (1978). *St. Mary's*, 205 Ga. App. at 127 (3) (c).

14

law suggest the opposite — a private corporation's internal policies do not create a duty upon which a tort action may independently lie. See, e.g., *Hare Krishna Roswell Hotel, LLC v. Corsino*, 369 Ga. App. 166, 170 (1) (892 SE2d 785) (2023) (company's internal policies do not create a legal duty to third parties); *Wages v. Amisub of Ga.*, 235 Ga. App. 156, 159 (2) (508 SE2d 783) (1998) (although relevant to negligence claim, hospital's internal policies did not create a duty to establish negligence per se; rejecting argument that *St. Mary's* recognized a cognizable duty for internal protocols). And Othman points to no case law from our Court recognizing a *St. Mary's* claim premised upon a hospital's failure to follow its internal Rules and Regulations alone.

Additionally, our recognition of the right to sue in tort in *St. Mary's* was premised upon OCGA § 51-1-6 and the physician's common-law right to hospital staff privileges (and the ensuing duty of a hospital not to infringe upon that common-law right arbitrarily or capriciously). 205 Ga. App. at 126-127 (3) (c). Othman points to no corresponding right (or duty by the hospital) concerning how many patients a physician is entitled to see. Othman's staff privileges were not at risk in this dispute. The record shows that he and other Magna Care physicians continue to enjoy

admitting privileges and practice regularly at the Hospital. In applying *St. Mary's*, we have only recognized a physician's right to sue when his or her staff privileges are terminated or effectively terminated. Compare *Madonna v. Satilla Health Svcs.*, 290 Ga. App. 148, 150-152 (658 SE2d 858) (2008) (*St. Mary's* claim recognized where physicians' applications for staff privileges were denied without recognition of the hospital's bylaws' procedural provisions); *Satilla Health Svcs., v. Bell*, 280 Ga. App. 123, 128-132 (1) (633 SE2d 575) (2006) (recognizing *St. Mary's* claim where a hospital adopted a resolution that would "effectively terminate" staff privileges for several physicians because those physicians would no longer be given access to the hospital's facilities and resources, and the hospital did not comply with its bylaws when enacting the resolution); *Katz v. Hosp. Auth. of Rabun County*, 254 Ga. App. 209, 211 (561 SE2d 858) (2002) (although physician's privileges were not technically revoked, *St. Mary's* claim recognized where physician was informed that his privileges were revoked and hospital cancelled his contract to provide services based on alleged failure to follow bylaws), with *Rowell v. Phoebe Putney Mem. Hosp.*, 338 Ga. App. 603, 606-607 (2) (791 SE2d 183) (2016) (no *St. Mary's* claim existed even though question of fact remained as to whether the hospital violated its bylaws with respect to suspending physician's

16

staff privileges because privileges were never actually suspended and physician made the unilateral decision to resign); *Mulligan v. Brunswick Mem. Hosp. Auth.*, 264 Ga. App. 39, 40 (4) (589 SE2d 851) (2003) (affirming summary judgment to defendant hospital for unspecified tort claims, where physician did not allege that her clinical privileges were in any way limited by a violation of hospital bylaws). Here, although Othman and his hospitalist group are seeing fewer patients than before, his privileges cannot be said to have been terminated or effectively terminated.

Othman's attempt to shape his claims as arising from the Hospital's Bylaws, as opposed to its Rules and Regulations, is unavailing. Othman argues that the Bylaws expressly set forth that he, as a physician on the Medical Staff, has the prerogative to "exercise [his] privileges granted without limitation." However, "without limitation" refers to a physician's right to actually practice in the Hospital versus treating as many patients as the physician desires. (See above precedent concerning "effective" termination of privileges, such as in *Bell*, 280 Ga. App. at 128-132 (1), where certain physicians were denied access to the facilities and resources of the hospital).

Additionally, Othman argues that a *St. Mary's* claim can be raised against a Hospital who fails to follow its Rules and Regulations — claiming that because state

regulations require the Hospital to operate under "medical staff bylaws and medical staff rules and regulations," OCGA § 51-1-6's recognition of a duty arising under a statute is implicated. See Ga. Comp. R. & Regs. 111-8-40-.09 (b) (2); *St. Mary's*, 205 Ga. App. at 126-127 3 (c). However, this argument is contradicted by *St. Mary's* itself. Othman states that "[t]he underlying premise of *St. Mary's* is the application of OCGA § 51-1-6 to Ga. Comp. R. & Regs. 111-8-40-.09." But that is not the case; *St. Mary's* is premised on OCGA § 51-1-6 and a physician's common law right to practice in hospitals. 205 Ga. App. at 126-127 (3) (c). Indeed, the Court in *St. Mary's* recognized that a cause of action may lie for "breach of a duty arising under a statute," and also recognized that hospital bylaws are generally required under state administrative law. But, the Court did not conclude that it was the state regulatory rules that create the duty upon which a claim is based. Id. And, as described above, our subsequent precedent on this issue has made clear that the duty owed to physicians is that arising from the hospital's bylaws in relation to the termination of staff privileges. We have also been very clear that, outside of this narrow situation, hospitals have "broad power . . . to control the administrative, operational, and managerial functions of the facility and its staff[.]" Id. at 127 (3) (c). See also *Cobb*

*County-Kennestone Hosp. Auth. v. Prince*, 242 Ga. 139, 143-146 (1) (249 SE2d 581) (1978) (describing that hospitals must be given significant discretion in deciding how best to organize and operate, while also recognizing the State's role in preserving a functional public health system).

Accordingly, we conclude that Othman did not assert any viable *St. Mary's* claims, and the Defendants were entitled to summary judgment on these claims. We thus reverse the trial court's order to the extent it denied summary judgment to the Defendants on these claims.[5]

### *Negligence claims*

2. We find the discussion in Division 1 also dispositive as to Othman's alleged negligence claim. The Defendants assert in their cross-appeal that the trial court erred in denying their motion for summary judgment on this claim, and we agree. As described above, Othman does not establish a legal duty owed to him by the Defendants based on the unassigned or preassigned patient rules laid out in the Hospital's Rules and Regulations. Therefore, the Defendants cannot be found

---

[5] Given this conclusion, we need not address the parties' enumerations of error concerning the trial court's application of the economic loss rule, as such a ruling pertained to the damages Othman could seek under his purported *St. Mary's* claim.

negligent for their failure to enforce those rules for Othman's or Magna Care's benefit. See *Hare Krishna Roswell Hotel, LLC*, 369 Ga. App. at 168 (1) ("the threshold issue in a negligence action is whether and to what extent the defendant owes a legal duty to the plaintiff[, and] in the absence of a legally cognizable duty, there can be no fault or negligence") (citations and punctuation omitted). Accordingly, we reverse the trial court's denial of the Defendants' motion for summary judgment on Othman's claim of negligence.

*Trespass claim*

3. Othman asserts that the trial court erred in the October 20, 2022 order in dismissing his trespass claim. He argues that the trial court conflated whether a physician has a property interest in his clinical privileges at the Hospital with whether he has a property interest in the call coverage agreements. See *Faucher v. Rodziewicz*, 891 F2d 864, 869 (II) (B) (11th Cir. 1990) (declining to find that the economic value of staff privileges at a hospital are a protected property interest). He asserts that the call coverage agreements Magna Care had with local physicians are contracts, the violation of which is a chose in action, which creates a property interest to form the basis of a trespass claim. We discern no error.

We review the grant of any motion to dismiss de novo, and a motion to dismiss should not be granted unless the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof. We construe the pleadings in the light most favorable to the plaintiff with any doubts resolved in the plaintiff's favor.

*Pickens v. City of Waco*, 352 Ga. App. 37, 38 (833 SE2d 713) (2019) (citation and punctuation omitted).

Here, even if the trial court conflated the issue of where Othman was drawing his basis to sue for trespass (from his clinical privileges or his call coverage agreements), he still fails to state a valid basis for a trespass claim. A trespass to personalty claim (the type raised by Othman) requires a plaintiff to show "unlawful abuse of or damage done to the personal property of another." OCGA § 51-10-3. "The gist of a [trespass to personalty claim] is the injury done to the possession of the property." *Caldwell v. Church*, 341 Ga. App. 852, 856 (2) (a) (802 SE2d 835) (2017) (citation and punctuation omitted), disapproved on other grounds by *General Motors v. Buchanan*, 313 Ga. 811, 826 (2) (d) n.6 (874 SE2d 52) (2022). Personalty is defined as: "all property which is movable in nature, has inherent value or is representative of value, and is not otherwise defined as realty." OCGA § 44-1-3. And, in a trespass

21

action, the injury is immediate. See *Central of Ga. Ry. Co. v. Americus Const. Co.*, 133 Ga. 392, 398 (1) (65 SE 855) (1909) (contrasting trespass with nuisance). Here, Othman asserts only hypothetical economic damage to his business interests, not actual interference with any personalty that belongs to him. The mere fact that the Defendants' third-party contract with Quantum is damaging to Othman's and Magna Care's profit potential does not create a claim for trespass.

Othman's argument that the call coverage agreements create a chose in action does not rescue his claim. OCGA § 44-12-21 states: "For every violation of an express or implied contract and for every injury done by another to one's person or property, the law gives a right to recover and a remedy to enforce it. The right is a chose in action, and the remedy is an action at law." However, this statute simply articulates the principle that one can generally bring a legal action when he or she is aggrieved by another party. It does not create a right of action where one otherwise does not exist. See *Clarke County School Dist. v. Madden*, 99 Ga. App. 670, 673-674 (1) (110 SE2d 47) (1959) (explaining principle of statute, plaintiff must still show damage to an existing property right); *Luster v. Investors One Corp.*, 4:15-CV-0190-HLM-WEJ (N.D. Ga. Feb. 4, 2016) (OCGA § 44-12-21 does "not provide [an] independent right[ ] of

action"). Accordingly, we affirm the trial court's dismissal of Othman's trespass claim.

*Magna Care*

4. Othman next contests the trial court's decision concerning Magna Care's assignment of rights to him. First, this claim of error is not supported by any citation of legal authority, so it is deemed abandoned. Court of Appeals Rule 25 (d) (1). In any event, to the extent Othman argues that Othman could raise a trespass claim on Magna Care's behalf based on the call coverage agreements, such argument is unavailing, as described above in Division 3. To the extent he argues that he could raise a *St. Mary's* claim on behalf of Magna Care, we agree with the trial court that nothing in *St. Mary's* provides non-individuals a right to sue, and we decline to extend the holding in *St. Mary's* in this manner. 205 Ga. App. at 126-127 (3) (c). Accordingly, we affirm the trial court's judgment to the extent it found that Magna Care had no cognizable claims for trespass or under *St. Mary's*.

*Other*

5. Having concluded that none of Othman's substantive claims could survive dismissal or summary judgment, we also reverse the trial court's denial of summary

judgment to the Defendants on Othman's injunctive, attorney-fee, and punitive damages claims. See *Morris v. Pugmire Lincoln Mercury*, 283 Ga. App. 238, 241 (2) (641 SE2d 222) (2007) ("A prerequisite to any award of attorney fees under OCGA § 13-6-11 is the award of damages or other relief on the underlying claim. Similarly, punitive damages under OCGA § 51-12-5.1 cannot be awarded where no actual damages are awarded.") (citations and punctuation omitted); *Andrade v. Grady Mem. Hosp. Corp.*, 308 Ga. App. 171, 175 (4) (707 SE2d 118) (2011) ("Because the underlying claims in the complaint were correctly dismissed, . . . the trial court also correctly dismissed . . . the associated claim for injunctive relief[.]").

In sum, we affirm in Case No. A24A0868 because Othman has not shown error in the trial court's dismissal of his trespass claim, nor in the grant of summary judgment to the Defendants in his *St. Mary's* claim based on the unassigned patient rule. We reverse in Case No. A24A0869 because the Defendants have shown that they were entitled to summary judgment on Othman's remaining *St. Mary's* claims, negligence claims, and tangential claims.

*Judgment affirmed in case no. A24A0868; reversed in case no. A24A0869. Barnes, P. J., and Pipkin, J., concur.*